UNITED STATES of America,
Appellee,

v.

John Donald BARNES, Appellant.

No. 01–3048.

United States Court of Appeals,
District of Columbia Circuit.

Argued April 18, 2002.

Decided July 23, 2002.

Beverly G. Dyer, Assistant Federal Public Defender, argued the cause for the appellant. A. J. Kramer, Federal Public Defender, was on brief. Gregory L. Poe, Assistant Federal Public Defender, entered an appearance.

Jeannie S. Rhee, Assistant United States Attorney, argued the cause for the appellee. Roscoe C. Howard, Jr., United States Attorney, and John R. Fisher, Roy W. McLeese III and Barry Wiegand, Assistant United States Attorneys, were on brief.

Before: SENTELLE, HENDERSON and RANDOLPH, Circuit Judges.

Opinion for the court filed by Circuit Judge KAREN LeCRAFT HENDERSON.

Dissenting opinion filed by Circuit Judge SENTELLE.

KAREN LeCRAFT HENDERSON, Circuit Judge:

John D. Barnes (Barnes) appeals his conviction under 18 U.S.C. § 922(g)(9), which makes it unlawful for a person convicted of a "misdemeanor crime of domestic violence" to possess firearms or ammunition. Barnes challenges whether his 1998 assault conviction under D.C.Code § 22–504(a) constitutes a "misdemeanor crime of domestic violence" as defined in 18 U.S.C. § 921(a)(33)(A) because section 22–504(a) does not include as an express element of the offense any relationship between the offender and the victim. Our sister circuits that have addressed this question have rejected Barnes's reading of section 921(a)(33)(A). It is an issue of first impression for us. Barnes also raises several constitutional challenges to his firearms conviction. While section 921(a)(33)(A) is not a paradigm of precise draftsmanship, we nonetheless join the other circuits in concluding that section 921(a)(33)(A) does not require the predi-

cate "misdemeanor crime of domestic violence" to contain as an express element a relationship between the offender and his victim.

## I.

On August 5, 1997 Barnes was charged in D.C. Superior Court with assault under D.C.Code § 22–504(a).[1] The charging information alleged that on or about July 21, 1997 Barnes unlawfully assaulted Keisha Ellis, who, Barnes ultimately acknowledged, is his son's mother. *See* Charging Information in No. M–11747–97; January 14, 1998 Transcript in No. M–11747–97 at 16. After pleading guilty to the charge, Barnes was sentenced to a prison term of 180 days, execution of which was suspended on the condition of a one-year period of probation. The judgment and commitment/probation order required Barnes to observe standard conditions of probation and, in particular, to enroll in and complete the local court's domestic violence intervention program. *See* May 5, 1998 Judgment and Commitment Order at 1.

On August 17, 2000 an officer of the Metropolitan Police Department observed a vehicle being driven by Barnes. A paper trash bag obscured the right rear vent window. *See* 8/22/00 Tr. at 6. Believing that the car was stolen, the officer made a traffic stop and ran a search on Barnes's driver's license. The search revealed that he did not have a valid license. Upon placing Barnes under arrest for driving without a permit, the police officer conducted a search and discovered that Barnes had two .45 caliber bullets in his left pocket. *See* 8/22/00 Tr. 6–7. Another officer, who arrived at the scene before Barnes's arrest, searched the car and

found a loaded and operable Sig Sauer .45 caliber pistol underneath the driver's seat. After a records check revealed that Barnes had been convicted of assault under D.C.Code § 22–504(a), *see* D.C. Superior Court Case No. M–11747–97, Barnes was charged with the unlawful and knowing receipt and possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(9). *See* Information in Cr. No. 00–295. On October 6, 2001 pursuant to a plea agreement, Barnes entered a conditional guilty plea to the one-count criminal information. In accordance with Fed. R.Crim.P. 11(a)(2), his plea agreement explicitly reserved his right to challenge whether his May 5, 1998 assault conviction constituted a "misdemeanor crime of domestic violence" as defined in 18 U.S.C. § 921(a)(33)(A). Plea Agreement in *United States v. Barnes*, Cr. No. 00–0295 at 2.

On February 1, 2001 Barnes filed a brief in district court, raising the statutory claim explicitly reserved in his plea agreement, *see* February 1, 2001 Defendant's Memorandum of Law (App. 20–58), along with an unopposed motion to supplement that claim with several constitutional arguments. *See* February 1, 2001 Defendant's Unopposed Motion to Supplement (App. 16–19). Barnes maintained that his assault conviction under D.C.Code § 22–504(a), which "does not include the relational element set forth in 18 U.S.C. § 921(a)(33)(A)," does not qualify as a "misdemeanor crime of domestic violence" under section 922(g)(9). February 1, 2001 Defendant's Memorandum of Law at 3–6 (App. 22–25). He also claimed that his conviction violated "principles of equal protection contained in the Due Process

---

1. Section 22–504(a) of the D.C.Code, now codified at § 22–404(a) (2001), stated: "Whoever unlawfully assaults, or threatens another in a menacing manner, shall be fined not more than $1,000 or be imprisoned not more than 180 days, or both." The recodification did not change the language.

Clause of the Fifth Amendment" and that section 922(g)(9), read in conjunction with 18 U.S.C. § 921(a)(33)(A), was "unconstitutionally vague." *Id.* at 6–7. The government opposed Barnes's claims. *See* February 27, 2001 Government Memorandum of Law (App. 59–66).

On March 19, 2001 the district court held that Barnes's "conviction in the Superior Court of the District of Columbia in Criminal Case No. M–11747–97 for simple assault under D.C.Code § 22–504 constitutes a 'misdemeanor crime of domestic violence' within the meaning of 18 U.S.C. § 921(a)(33)(A) and can thus serve as a predicate for conviction under 18 U.S.C. § 922(g)(9)." March 19, 2001 Order at 1 (App. 76). Regarding the statutory question, the district court adopted the reasoning of the First and Eighth Circuits, stating that "[h]ad Congress intended to require the prosecution to prove as elements of the offense both the use of force and the relationship of the defendant to the victim, it surely could have done so by using the plural, 'elements,' rather than the singular, 'element,' when writing § 921(a)(33)'s definition of a misdemeanor crime of domestic violence." *See* March 19, 2001 Memorandum Opinion at 4 (citing *United States v. Meade,* 175 F.3d 215, 218–20 (1st Cir.1999), and *United States v. Smith,* 171 F.3d 617, 619–20 (8th Cir.1999)). The district court also rejected Barnes's constitutional challenges. *See* March 19, 2001 Memorandum Opinion at 7–11. On April 17, 2001 the district court sentenced Barnes to a term of imprisonment of twelve months and one day, followed by two years' supervised release as well as a special assessment of $100. 4/17/01 Tr. 7. Barnes filed a timely notice of appeal and the district court stayed execution of the sentence pending appeal.

## II.

■ Because the district court's ruling involved solely questions of law, our review is de novo. *See Butler v. West,* 164 F.3d 634, 639 (D.C.Cir.1999) (citations omitted); *United States v. Popa,* 187 F.3d 672, 674 (D.C.Cir.1999) (citations omitted) (first amendment challenge subject to de novo review).

### A. Elements of "Misdemeanor Crime of Domestic Violence"

In 1996, the Congress amended the Gun Control Act of 1968, 18 U.S.C. § 922 (1994), by providing that:

> It shall be unlawful for any person ... who has been convicted in any court of a misdemeanor crime of domestic violence, ... to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate commerce.

18 U.S.C. § 922(g)(9). Section 921 of Title 18, entitled "Definitions," provides in pertinent part:

> the term "misdemeanor crime of domestic violence" means an offense that—
>
> (i) is a misdemeanor under Federal or State law; and
>
> (ii) has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabitating with or has cohabitated with the victim as a spouse, parent, or guardian, or by a person similarly situated to a spouse, parent, or guardian of the victim

18 U.S.C. § 921(a)(33)(A).[2]

■■■■ Barnes asserts that the definition of "misdemeanor crime of domestic violence" set forth in section 921(a)(33)(A) requires the predicate offense to "contain, 'as an element,' not only the 'use or attempted use of physical force . . .' but also that the use of force be 'committed by' a person who maintained a domestic relationship with the victim, as specifically defined in the statute." *See* Barnes's Br. at 7–8. The government responds that "the text and legislative purpose" demonstrate that section 921(a)(33)(A) "does not require that the necessary domestic relationship be established as an element of the predicate offense." Gov't Br. at 12–13.

■■■■ In construing a statute, we look first for the plain meaning of the text. If the language of the statute has a "plain and unambiguous meaning," our inquiry ends so long as the resulting "statutory scheme is coherent and consistent." *See United States v. Wilson*, 290 F.3d 347, 352 (D.C.Cir.2002) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340, 117 S.Ct. 843, 846, 136 L.Ed.2d 808 (1997) (internal quotations omitted)). Whether statutory language is plain depends on "the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Id.* (quoting *Robinson*, 519 U.S. at 341, 117 S.Ct. at 843).

■■■■ Both sides agree that D.C.Code § 22–504(a) constitutes a "misdemeanor under . . . State Law" within the meaning of section 921(a)(33)(A)(i). Barnes and the government also agree that section 921(a)(33)(A)(ii) requires that a "misdemeanor crime of domestic violence" contain "as an element" "the use or attempted use of physical force, or the threatened use of a deadly weapon." 18 U.S.C. § 921(a)(33)(A)(ii). Moreover, there is no dispute that section 22–504(a) of the D.C.Code contains a similar element.[3] It also appears undisputed that Barnes and the victim of his assault, Keisha Ellis, had a son together at the time of the assault and thus share one of the domestic relationships included in section 921(a)(33)(A)(ii) ("committed . . . by a person with whom the victim shares a child in common"). *See* February 1, 2001 Defendant's Memorandum of Law at 2 ("Mr. Barnes shares a child in common with the complaintant [sic] in M–11747–97") (App. 21); February 1, 2001 Defendant's Memorandum of Law Exh. 3 at 16 (App. 45) and 22 (App. 51). Barnes contends, however, that the applicable relationship is an express element of the predicate offense because the prohibited "use of force" must be "committed" by a person with that relationship. Having been convicted of assault under D.C.Code § 22–504(a), which does not require a relationship between offender and victim, Barnes argues that his subsequent possession of a firearm is not prohibited by section 922(g)(9) because he has not been convicted of a "misdemeanor crime of domestic violence." While the domestic relationship requirement of section 921(a)(33)(A)(ii) must unquestionably be established in a section 922(g)(9) prose-

**2.** Section 924(a)(2) of Title 18 provides that "[w]hoever knowingly violates . . . [922(g)(9) ] shall be fined as provided in this title, imprisoned not more than 10 years or both." *See* 18 U.S.C. § 924(a)(2).

**3.** Assault under D.C.Code § 22–504(a) consists of: "(1) an act on the part of the accused (which need not result in injury); (2) the apparent present ability to injure the victim at the time the act is committed; and (3) the intent to perform the act which constitutes the assault at the time the act is committed." *Ruffin v. United States*, 642 A.2d 1288, 1295 (D.C.1994) (citing Criminal Jury Instructions for the District of Columbia, No. 4.07 (4th ed.1993)).

cution, the dispute here is whether the predicate offense must itself expressly include the requirement.

▮▮▮ The premise of Barnes's reading of section 921(a)(33)(A)(ii) is that the "committed by" language modifies the "use of force" clause immediately preceding it and thus is included in the "element" that a "misdemeanor crime of domestic violence" must contain. Barnes refers to what is known as the "Rule of the Last Antecedent," whereby "[o]rdinarily, qualifying phrases are to be applied to the words or phrase immediately preceding and are not to be construed as extending to others more remote." *United States v. Pritchett,* 470 F.2d 455, 459 & n. 9 (D.C.Cir.1972). Accordingly, Barnes argues that the "committed by" phrase modifies the "use of force" element because the latter immediately precedes the former within subpart (ii). As was noted in *Pritchett,* however, "the Rule of Last Antecedent is not an inflexible rule, and is not applied where the context indicates otherwise." *Id.* at 459. Here, context is everything. Bearing in mind that, "when construing a statute, we are obliged to give effect, if possible, to every word Congress used," *Murphy Exploration & Prod. Co. v. U.S. Dept. of Interior,* 252 F.3d 473, 481 (D.C.Cir.2001) (quoting *Reiter v. Sonotone Corp.,* 442 U.S. 330, 339, 99 S.Ct. 2326, 2331, 60 L.Ed.2d 931 (1979)); *see also Alabama Power Co. v. EPA,* 40 F.3d 450, 455 (D.C.Cir.1994) ("[s]tatutory text is to be interpreted to give consistent and harmonious effect to each of its provi-

sions"), we must determine if "committed by" can, consistent with its meaning, modify "use of force." The verb "commit" means "to do (something wrong or reprehensible), to perpetrate, be guilty of (a crime or *offence,* etc.)." *Oxford English Dictionary* 559 (2d ed.1989) (emphasis added). The *use* of force is not "committed," "done" or "perpetrated."[4] An *"offense"* is "committed" or "perpetrated." And here, the offense of a "misdemeanor crime of domestic violence" must be committed by a person in one of the specific relationships. Subpart (ii) of section 921(a)(33)(A) is not a complete sentence—subsection 921(a)(33)(A) is itself one sentence that begins with "[e]xcept as otherwise provided in subparagraph (C), the term 'misdemeanor crime of domestic violence' means an offense that—" and continues through subparts (i) and (ii).[5] In short, a "misdemeanor crime of domestic violence" means an offense that is a misdemeanor, has, as an element, the use of force and was committed by a person with the requisite relationship. An illustration using simpler language demonstrates the point. If the statute read

> "larceny means an offense that has, as an element, monetary gain, committed by a person . . . ,"

it would be obvious that "committed" modifies "offense" and that monetary gain is the only "element." Just as "monetary gain" is not "committed," the "use of force" is not "committed." The "offense" is "committed."[6]

---

4. While "commit" can also mean "obligate" or "pledge" as in "the President committed to the use of force," that meaning is plainly inapplicable. *Oxford English Dictionary* 560.

5. Interestingly, the sentence has no punctuation mark at the end.

6. In section 921(a)(33)(A)(ii), the word "committed" is a past participle used adjectivally

to modify the noun "offense." "[O]ffense" is a predicate nominative referring to the subject of the sentence "the term 'misdemeanor crime of domestic violence.'" "[U]se of force" is the direct object of the verb "has," which here means "includes" or "contains." *Merriam-Webster's Third New International Dictionary* 1039 (1993). The phrase "as an element" adjectivally modifies "use of force."

■ Barnes argues that if the Congress had intended the predicate offense to include only the "use of force" as an express element, it would have inserted the words "and was" before "committed by" and placed the remainder of (ii) in a subpart numbered (iii). Barnes Br. at 11. Needless to say, if the Congress had more precisely articulated its intention, our task would have been easier. In interpreting a statute, however, we are to determine its true, natural meaning, where ascertainable, irrespective of cumbersome syntax. *See United States v. Moore*, 613 F.2d 1029, 1040 (D.C.Cir.1979) ("or" read as conjunctive because "strict grammatical construction will frustrate legislative intent" evinced by legislative history and statutory purpose); *United States Nat'l Bank of Oregon v. Indep. Ins. Agents of America, Inc.*, 508 U.S. 439, 454–55, 113 S.Ct. 2173, 2182, 124 L.Ed.2d 402 (1993) (purported "plain-meaning" analysis based only on punctuation inadequate where "deployment of quotation marks" points in one direction and "all of the other evidence from the statute points the other way"); *cf. United States v. Shreveport Grain & Elevator Co.*, 287 U.S. 77, 82–83, 53 S.Ct. 42, 44, 77 L.Ed. 175 (1932) ("To determine the intent of the law, the court, in construing a statute will disregard the punctuation, or will repunctuate, if that be necessary, in order to arrive at the natural meaning of the words employed."). In a Ninth Circuit decision, *Longview Fibre Co. v. Rasmussen*, 980 F.2d 1307 (9th Cir. 1992), the court analyzed the following language of the Clean Water Act: "in approving or promulgating any effluent limitation or other limitation under section 1311, 1312, 1316, or 1345 of this title." *Id.* at 1310 (quoting 33 U.S.C. § 1369(b)(1)(E)). The critical question, the court declared, was "[d]oes the modifier reach back?" In other words, do the listed sections modify "other limitation" only or "any effluent limitation" as well? It first noted that "[g]rammatically, either interpretation could be correct, and the [first] interpretation would more likely be right. 'Subordinate clauses should be placed near the words they modify.' Margaret Shertzer, The Elements of Grammar 47 (1986). That is why we say, 'As I was flying into Ketchikan, I saw a pod of whales,' not 'I saw a pod of whales flying into Ketchikan.'" *Id.* at 1310–11. In concluding that the modifier does indeed reach back, the court stated:

Syntax cannot always control construction. The legislative process may have subordinated clear writing to some other goal. We must examine the meaning of the words to see whether one construction makes more sense than the other as a means of attributing a rational purpose to Congress. Read for rational purpose, the syntactically disfavored construction of section 1369(b)(1)(E) is sensible, the other as unlikely as the flying whales.

*Id.* at 1311. The fact that the Congress somewhat awkwardly included the "committed by" phrase in subpart (ii) (instead of adding a subpart (iii)) is not significant in view of the *un*natural reading that would result if "committed by" were construed to modify "use of force."[7]

---

*See generally* Martha Kolln, *Understanding English Grammar* 21–53 ("Sentence Patterns") (4th Ed.1994). Indeed, the entire "committed by" phrase can be construed to modify the language that begins with "offense." Again, a simpler sentence will demonstrate: "Act 284 is a law that deals with robbery, enacted by the legislature in 1975." In this sentence, "enacted by the legislature in 1975" can modify both "a law" as well as "a law that deals with robbery."

7. In fact, if the Rule of Last Antecedent were literally applied, "committed by" would modify "threatened use of a deadly weapon."

The dissent questions the majority's adoption of a construction of section 921(a)(33)(A)(ii) that was not advanced by the government, namely that "committed" modifies "offense." *See* Dissent op. at 1370. But the meaning of the statute is "the issue ... properly before the court," *Kamen v. Kemper Fin. Servs., Inc.,* 500 U.S. 90, 99, 111 S.Ct. 1711, 1718, 114 L.Ed.2d 152 (1991),[8] and thus "the court ..., retains the *independent* power to identify and apply the proper *construction* of governing law." *Id.* (emphasis added). Alluding briefly to the merits, the dissent rejects what it refers to as "the majority's *ipse dixit.*" Dissent op. at 1370. *"Ipse dixit"* means a "bare assertion resting on the authority of an individual." *Black's Law Dictionary* 961 (4th ed.1968). The "individuals" on whose authority the majority rests for the meaning of "committed" are the *Oxford English Dictionary* and *Merriam-Webster's Third New International Dictionary. See supra* at 1360. Our dissenting colleague declares that it "cannot be gainsaid that the language of this statute is ambiguous," adding that the majority opinion is "rife with allusions to its ambiguity." Dissent op. at 1369. The dissent has not read the majority opinion carefully. As the foregoing discussion manifests, we refer to imprecision (not "ambiguity") only in connection with the *syntax* of the statute, not with the meaning of the language used.

That the district court as well as every other court that has considered the issue concluded, albeit on a different basis, that section 921(a)(33)(A)'s language plainly requires only one element, *i.e.,* the use of force, further bolsters our interpretation. *See* March 19, 2001 Memorandum Opinion at 4; *United States v. Chavez,* 204 F.3d 1305, 1313–14 (11th Cir.2000) (concluding that conviction under 18 U.S.C. § 113(a)(4), general assault statute for U.S. territories, constitutes "misdemeanor crime of domestic violence"); *United States v. Meade,* 175 F.3d 215, 218–19 (1st Cir.1999) (defendant's state misdemeanor conviction for assaulting his spouse, under Massachusetts's general assault and battery statute, is "misdemeanor crime of domestic violence," within 18 U.S.C. §§ 921(a)(33)(A), 922(g)(9)); *United States v. Smith,* 171 F.3d 617, 620 (8th Cir.1999) (conviction under Iowa misdemeanor simple assault statute for defendant's assault of mother of his child constitutes "misdemeanor crime of domestic violence"); *United States v. Thomson,* 134 F.Supp.2d 1227, 1230 (D.Utah 2001); *United States v. Meade,* 986 F.Supp. 66, 68 (D.Mass.1997); *United States v. Smith,* 964 F.Supp. 286, 291–92 (N.D.Iowa); *see also United States v. Ball,* 7 Fed.Appx. 210, 213, 2001 WL 324624 (4th Cir.2001), *cert. denied,* 122 S.Ct. 226 (2001) (unpublished per curiam order). These courts found the Congress's use of the singular "element" rather than "elements" determinative. As the district court in *Meade* stated:

> The crux of the matter is whether the phrase "as an element" modifies both requirements or just the use of force requirement. The inclusion of both the use of force and domestic relationship requirements in one sentence does not mandate that they be treated as one element. In drafting the statute Con-

---

Would Barnes prevail if he then argued that he cannot be convicted under section 922(g)(9) because the underlying assault did not involve a deadly weapon?

**8.** Barnes defines the "Issue Presented for Review" as "[w]hether [his] conviction ... must

be reversed because his prior conviction ... does not constitute a 'misdemeanor crime of domestic violence,' *as defined by 18 U.S.C. § 921(a)(33)(A)....*" Barnes's Br. 1–2 (emphasis added). *See also* Gov't Br. ix.

gress placed the singular word "element" immediately before the use of force requirement. In choosing the singular word "element," Congress intended to modify only the language immediately following the phrase. If Congress had intended that both requirements be mandatory elements of the underlying state statute the word "element" would have been in the plural to encompass both requirements. Reading the phrase "has, as an element" in its ordinary plain meaning, it is clear the singular "element" modifies only the use of force requirement.

*Meade*, 986 F.Supp. at 68. Barnes counters that if, as he contends, the "committed by" language modifies the use of force clause, "Congress could have reasonably viewed the two factual requirements as a single element." Barnes Br. at 12. Under this view, the use of the singular element is not determinative because a qualifying "misdemeanor crime of domestic violence" simply has one element with two subparts. To be sure, the Congress has used the singular "element" when referring to more than one factor in other provisions of Title 18. *See, e.g.*, 18 U.S.C. § 16(a) (defining "crime of violence" as "an offense that has as *an element* the use, attempted use, or threatened use of physical force against

the person or property of another"(emphasis added)). Nonetheless, while a "crime of violence" may have a necessarily two-pronged single "element," namely (1) use of force (2) against another's person or property, the singular "element" used in section 921(a)(33)(A)(ii) is followed by two independent, and unlinked, factors, the use of force and the perpetrator's relationship to the victim.[9] Our research has revealed that section 921(a)(33)(A) of Title 18 appears to be the only federal criminal statute in which the "has, as an element," language is set off by commas. In addition, that the "committed by" language is itself separated from the "use of force" language by a comma (as well as by the clause "or the threatened use of a deadly weapon") reinforces the separateness of the "use of force" element from the "committed by" language. In defining crimes that have more than one distinct element, the Congress generally uses the phrase "has as its elements" (emphasis added). *See, e.g.*, 18 U.S.C. § 3559(2)(A) ("the term 'assault with intent to commit rape' means an offense that has as its elements engaging in physical contact with another person or using or brandishing a weapon against another person with intent to commit aggravated sexual abuse or sexual abuse").[10]

---

9. While the "has as an element" language appears throughout Title 18, it is generally used in reference to a "crime of violence" and is defined as in 18 U.S.C. § 16(a). *See, e.g.*, 18 U.S.C. §§ 373, 924(c)(3)(A), 924(e)(2)(B)(i).

10. *See also* 18 U.S.C. § 3559(2)(B) ("the term 'arson' means an offense that has as its elements maliciously damaging or destroying any building, inhabited structure, vehicle, vessel, or real property by means of fire or an explosive"); 18 U.S.C. § 3559(2)(C) ("the term 'extortion' means an offense that has as its elements the extraction of anything of value from another person by threatening or placing that person in fear of injury to any person or kidnapping of any person"); 18 U.S.C. § 3559(2)(D) ("the term 'firearms use'

means an offense that has as its elements those described in section 924(c) or 929(a), if the firearm was brandished, discharged, or otherwise used as a weapon and the crime of violence or drug trafficking crime during and relation to which the firearm was used was subject to prosecution in a court of the United States or a .court of a State, or both"); 18 U.S.C. § 3559(2)(E) ("the term 'kidnapping' means an offense that has as its elements the abduction, restraining, confining, or carrying away of another person by force or threat of force"); *see also* 42 U.S.C. § 14071(a)(3)(B) ("The term 'sexually violent offense' means ... an offense that has as its elements engaging in physical contact with another person

While we do not necessarily find the singular versus plural rationale determinative, it does support our interpretation of section 921(a)(33)(A)(ii) as requiring that a "misdemeanor crime of domestic violence" include only the use of force as an element.

■ We are also influenced by the fact that Barnes's interpretation of section 921(a)(33)(A)(ii) would create a "significant practical anomaly," rendering the law a nullity in a majority of the states as well as at the Federal level. *Meade*, 175 F.3d at 220. A "statute should ordinarily be read to effectuate its purposes rather than frustrate them." *See, e.g., Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. Ruckelshaus*, 719 F.2d 1159, 1165 (D.C.Cir.1983) (citations omitted).[11] Section 922(g)(9) of Title 18, known as the "Lautenberg Amendment," 142 Cong. Rec. D927–02, *D928 (1996), was enacted in order to remedy the nationwide problem that those convicted of a felony involving domestic assault were prohibited from firearms possession while those convicted of a misdemeanor involving domestic assault were not. In explaining the law's disparate treatment of a person convicted of a domestic assault misdemeanor, Senator Lautenberg stated:

> Under current Federal law, it is illegal for persons convicted of felonies to possess firearms. Yet, many people who engage in serious spousal or child abuse ultimately are not charged with or convicted of felonies. At the end of the day, due to outdated laws or thinking, perhaps after a plea bargain, they are, at most, convicted of a misdemeanor.... Often acts of serious spouse abuse are not even considered felonies.... This amendment would close this dangerous loophole and keep guns away from violent individuals who threaten their own families[.]

142 Cong. Rec. S10377–01, *S10377–78 (1996). Fewer than half of the states currently have a "domestic assault" statute that expressly includes as elements both the use of force and a specific relationship between the offender and victim.[12] Most states, and the District of Columbia, charge domestic violence offenders under general assault statutes. Under Barnes's construction, the Congress remedied one disparity—between felony and misdemeanor domestic violence convictions—while at the same time creating a new disparity among (and sometimes, within) states. A person who abused his spouse in a state with a domestic assault statute would lose the right to possess a firearm while a person who engaged in the same conduct but was convicted of simple assault would not. Moreover, Barnes's interpretation would make section 921(a)(33)(A)(i)'s reference to a misdemeanor under "Federal law" a nullity because there is no federal misdemeanor that includes both the use of

---

with intent to commit aggravated sexual abuse or sexual abuse.").

11. The Bureau of Alcohol, Tobacco and Firearms takes the position that "a misdemeanor crime of domestic violence" includes "all misdemeanors that involve the use or attempted use of physical force (e.g., simple assault, assault and battery) if the offense is committed by one of the defined parties. This is true whether or not the State statute or local ordinance specifically defines the offense as a domestic violence misdemeanor." Department of Treasury, Bureau of Alcohol, Tobacco

and Firearms, Open Letter to All State and Local Law Enforcement Officials, http://www.atf.treas.gov/firearms/information /opltrleo.htm, (last visited June 24, 2002).

12. According to the district court in *Smith*, 964 F.Supp. at 293, in 1997 "only seventeen of the fifty states and Puerto Rico have a law that would qualify under section 921(a)(33) if the domestic relationship was a required element of the predicate offense." The government asserts that the number currently stands at nineteen. *See* Gov't Br. at 18 n.11 (listing statutes).

force and the domestic relationship as express elements. *See, e.g.,* 18 U.S.C. § 113(a)(4) (misdemeanor simple assault within maritime or territorial jurisdiction of the United States).

■■■ The legislative history of the Lautenberg Amendment confirms what the natural meaning of the statutory language reveals, namely that the "has as an element" language refers solely to the use of force. We "do not resort to legislative history to cloud a statutory text that is clear," which we believe section 921(a)(33)(A) to be. Were it unclear, we could look to legislative history to "shed new light on congressional intent." *U.S. Telecom Ass'n v. FBI,* 276 F.3d 620, 625 (D.C.Cir.2002) (internal quotations omitted). In describing the legislation's enforcement provisions, Senator Lautenberg foresaw the statutory construction question central to this case:

> Mr. President, the final agreement does not merely make it against the law for someone convicted of a misdemeanor crime of domestic violence from possessing firearms. It also incorporates this new category of offenders into the Brady law, which provides for a waiting period for handgun purchases. Under the Brady law, local law enforcement authorities are required to make reasonable efforts to ensure that those who are seeking to purchase a handgun are not prohibited under Federal law from doing so. Mr. President, convictions for domestic violence-related crimes often are for crimes, *such as assault, that are not explicitly identified as related to domestic violence.* Therefore, it will not always be possible for law enforcement authorities to determine from the face of someone's criminal record whether a particular misdemeanor conviction in-

volves domestic violence, as defined in the new law.

142 Cong. Rec. S11872-01, \*S11878 (1996) (emphasis added). *See North Haven Bd. of Educ. v. Bell,* 456 U.S. 512, 526–27, 102 S.Ct. 1912, 1920–21, 72 L.Ed.2d 299 (1982) ("remarks ... of the sponsor of the language ultimately enacted, are an authoritative guide to the statute's construction"); *see also Amalgamated Transit Union v. Skinner,* 894 F.2d 1362, 1370 n. 6 (D.C.Cir. 1990). His statements express the unmistakable intent that a "misdemeanor crime of domestic violence" need not expressly include a domestic relationship element.

■■■ The legislative history also reveals that the "has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon" language was added to the statute shortly before the provision was enacted. Replacing the originally proposed language that defined the predicate offense as a "crime of violence," Senator Lautenberg explained that the addition of the "as an element" language was not intended to apply to the domestic relationship language:

> Under the final agreement, the ban applies to crimes that have, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon. This is an improvement over the earlier version, which did not explicitly include within the ban crimes involving an attempt to use force, or the threatened use of a weapon, if such an attempt or threat did not also involve actual physical violence. In my view, anyone who attempts or threatens violence against a loved one has demonstrated that he or she poses an unacceptable risk, and should be prohibited from possessing firearms.

142 Cong. Rec. S11872-01.[13] Based on our "natural meaning" reading of the text, we

---

**13.** There was concern expressed that "crime

of violence" was potentially "too broad, and

reject Barnes's interpretation of section 921(a)(33)(A)(ii) and conclude instead that his conviction under D.C.Code § 22–504(a) qualifies as a "misdemeanor crime of domestic violence" within the meaning of the Lautenberg Amendment.[14]

## B. Vagueness

■ Barnes contends the district court's interpretation of section 921(a)(33)(A)(ii) renders it unconstitutionally vague because "there is no way for a person to know from its language whether the relational requirement is an element of the predicate crime." Barnes Br. at 16. He further argues that the relationship requirement itself is infirm because "a defendant convicted of simple assault cannot be sure whether he or she might later be held to be a 'guardian' of the victim ... or 'similarly situated' to a spouse, parent, or guardian of the victim." *Id.* at 17. A similar argument has been rejected by two circuit courts. *See Meade*, 175 F.3d at 222 (section 921(a)(33)(A)(ii) contains no ambiguity as to either persons to whom prohibitions apply or proscribed conduct); *Smith*, 171 F.3d at 623 (rejecting vagueness challenge).

■ To decide a vagueness challenge, we must assess whether it "either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." *United States v. Lanier*, 520 U.S. 259, 266, 117 S.Ct. 1219, 1225, 137 L.Ed.2d 432 (1997). We have noted before that "the Constitution

does not require unattainable feats of statutory clarity." *Hutchins v. District of Columbia*, 188 F.3d 531, 546 (D.C.Cir.1999) (quotations omitted). As the Eighth Circuit in *Smith* declared, "[w]e would be hard pressed to find an individual of common, or even not so common, intelligence who could not determine whether he was in one of the enumerated relationships when he committed a misdemeanor crime including an element of physical force." 171 F.3d at 623. Barnes's alternative interpretation of the statutory text does not by itself establish vagueness. "Since words, by their nature, are imprecise instruments, even laws that easily survive vagueness challenges may have gray areas at the margins." *United States v. Nason*, 269 F.3d 10, 22 (1st Cir.2001) ("use of force" in § 921(a)(33)(A)(ii) not unconstitutionally vague) (citing *United States v. Wurzbach*, 280 U.S. 396, 399, 50 S.Ct. 167, 169, 74 L.Ed. 508 (1930)). We conclude that section 921(a)(33)(A)(ii) is sufficiently clear to reject Barnes's vagueness attack.

## C. Due Process

■ Barnes further argues that section 922(g)(9) violates his due process right under the Fifth Amendment because it does not require the government to prove, as an element of the offense, that he knew his possession of a firearm was illegal. A long line of circuit courts has rejected this argument. *See, e.g., United States v. Mitchell*, 209 F.3d 319, 322 (4th Cir.) (citing *Bryan v. United States*, 524 U.S. 184, 192, 118 S.Ct. 1939, 1945, 141

---

could be interpreted to include an act such as cutting up a credit card with a pair of scissors." 142 Cong. Rec. S11872–01.

**14.** We also reject Barnes's invocation of the rule of lenity in construing the Lautenberg Amendment. The United States Supreme Court stated in *Moskal v. United States*, 498 U.S. 103, 111 S.Ct. 461, 112 L.Ed.2d 449

(1990), that the rule of lenity is reserved for a case in which "reasonable doubt persists about a statute's intended scope even after resort to the language and structure, legislative history, and motivating policies of the statute." *Id.* at 108, 111 S.Ct. at 465 (quotations omitted). We have no such doubt regarding section 921(a)(33)(A)(ii).

L.Ed.2d 197 (1998), *cert. denied,* 531 U.S. 849, 121 S.Ct. 123, 148 L.Ed.2d 78 (2000)). Moreover, Barnes did not adequately raise this argument below and, thus, we review it for plain error only.[15]

As we already noted, section 922(g)(9) requires the defendant to "knowingly" violate the statute. *See supra* at 1359 n. 2. The Supreme Court has made clear that "the knowledge requisite to knowing violation of a statute is factual knowledge as distinguished from knowledge of the law." *Bryan v. United States,* 524 U.S. 184, 192, 118 S.Ct. 1939, 1945, 141 L.Ed.2d 197 (1998) (internal quotation marks omitted). The *Bryan* Court concluded that "unless the text of the statute dictates a different result, the term 'knowingly' merely requires proof of knowledge of the facts that constitute the offense." *Id.* at 193, 118 S.Ct. at 1946. The rule in *Bryan* has been applied by other circuit courts without exception in interpreting section 924(a)(2), which requires that a section 922(g)(9) offense be "knowingly" committed. *See, e.g., United States v. Bostic,* 168 F.3d 718, 722–23 (4th Cir.1999), *cert. denied,* 527 U.S. 1029, 119 S.Ct. 2383, 144 L.Ed.2d 785 (1999); *United States v. Beavers,* 206 F.3d 706, 708–09 (6th Cir.2000); *United States v. Meade,* 175 F.3d 215, 226 n. 5 (1st Cir.1999). Barnes knowingly possessed the firearm and that is the only knowledge required to convict him. He argues, however, that section 922(g)(9) falls within the narrow exception carved out by the holding in *Lambert v. State of California,* 355 U.S. 225, 228–30, 78 S.Ct. 240, 242–43, 2 L.Ed.2d 228 (1957). *See* Barnes Br. at 19. *Lambert* involved a city ordinance that made it a crime for any felon to remain in Los Angeles for more than five days without registering with the police. *Lambert,* 355 U.S. at 226–27, 78 S.Ct. at 241–42. The Supreme Court reversed the defendant's conviction on due process grounds because the city failed to establish that the defendant had notice that her "wholly passive conduct" could constitute a crime. *Id.* at 228, 78 S.Ct. at 243. Barnes contends that section 922(g)(9) is a similar statute that subjects to criminal prosecution an individual engaged in otherwise innocent conduct—possession of a firearm. The salient fact in *Lambert,* however, was that the defendant had no reason to know, or even to attempt to discover, that she was required to register in order to continue living in Los Angeles. Other circuit courts that have addressed this argument have uniformly rejected it. The Sixth Circuit's observation in *United States v. Beavers* is instructive:

> We conclude that Beavers's conviction on a domestic violence offense sufficiently placed him on notice that the government might regulate his ability to own or possess a firearm. As noted in *[United States v.] Baker[,* 197 F.3d 211 (6th Cir. 1999)] and *Meade,* domestic abuse is a well-known problem, and it should not surprise anyone that the government has enacted legislation in an attempt to limit the means by which persons who have a history of domestic violence might cause harm in the future.

206 F.3d at 710. Having been convicted of a violent crime, Barnes had reason to know that the government could regulate his possession of firearms and thus he cannot avail himself of the limited *Lambert* exception.[16]

---

**15.** Barnes raised the issue in district court at the end of his memorandum in the last sentence of the last footnote and merely cited a dissenting opinion in *United States v. Hutzell,* 217 F.3d 966, 969 (8th Cir.2000). *See* February 1, 2001 Defendant's Memorandum of Law at 7 n.7 (App. 26).

**16.** The Supreme Court has steadfastly resisted efforts to expand *Lambert'*s reach. *See, e.g.,*

*D. Equal Protection*

■ Section 921(a)(33)(B)(ii) provides an exception to section 922(g)(9) "if the conviction has been expunged or set aside, or is an offense for which the person has been pardoned or has had civil rights restored (if the law of the applicable jurisdiction provides for the loss of civil rights under such an offense)." In the District of Columbia, as in most states, an individual convicted of a misdemeanor does not forfeit his civil rights. Barnes argues that he is thus in a worse position than a person convicted in a jurisdiction that authorizes the loss of civil rights but can also restore them. Claiming that there is no rational basis for this distinction, he asserts that his conviction violates equal protection. *See* Barnes Br. at 21 (citing *Bolling v. Sharpe*, 347 U.S. 497, 499, 74 S.Ct. 693, 694, 98 L.Ed. 884 (1954)). His claim is without merit.

■ Because domestic violence misdemeanants are not a suspect class for equal protection purposes and because no "fundamental right" is implicated, the classification will be upheld "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Fraternal Order of Police v. United States*, 173 F.3d 898, 903 (D.C.Cir.) (quotations omitted), *cert. denied*, 528 U.S. 928, 120 S.Ct. 324, 145 L.Ed.2d 253 (1999). The Congress's decision to incorporate state law governing forfeiture of civil rights was rational irrespective of differences among states regarding restoration. Furthermore, the Congress provided other methods such as expungement and pardon that Barnes might use to come within the exception of section 921(a)(33). *See McGrath v. United States*, 60 F.3d 1005, 1008 (2d Cir.1995), *cert. denied*, 516 U.S.

1121, 116 S.Ct. 929, 133 L.Ed.2d 857 (1996).

For the foregoing reasons, we affirm the district court's holding that Barnes's conviction of assault under D.C.Code § 22–504(a) constitutes a "misdemeanor crime of domestic violence" within the meaning of 18 U.S.C. § 921(a)(33)(A) and thus validly serves as a predicate offense for his conviction under 18 U.S.C. § 922(g)(9).

*So ordered.*

SENTELLE, Circuit Judge, dissenting:

Defendant Barnes appeals from a judgment sentencing him for the violation of a statute which, in pertinent part, declares it "unlawful for any person . . . who has been convicted in any court of a misdemeanor crime of domestic violence, to . . . possess . . . any firearm. . . ." 18 U.S.C. § 922(g)(9). The statute defines the term "misdemeanor crime of domestic violence" as meaning an offense that is a misdemeanor under federal or state law; and "has, as an element, the use or attempted use of physical force, or threatened use of a deadly weapon, committed by . . . a person with whom the victim shares a child in common. . . ." 18 U.S.C. § 921(a)(33)(i) & (ii).

The case before us turns on statutory interpretation. If the language of a statute has a "plain and unambiguous meaning," our inquiry ends so long as the resulting "statutory scheme" is coherent and consistent. *United States v. Wilson*, 290 F.3d 347, 352 (D.C.Cir.2002). As I read the federal firearms statute at issue, Congress required that the underlying misdemeanor statute of conviction must have had as an element "the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a [speci-

---

*United States v. Freed*, 401 U.S. 601, 609, 91 S.Ct. 1112, 1118, 28 L.Ed.2d 356 (1971) (de-

clining to extend *Lambert* to possession of hand grenades).

fied related person]." Barnes, according to the record in the case, did possess a firearm and had been convicted of violating D.C.Code § 22–504(a), which outlaws general assaults but makes no mention of the status of any relationship between the perpetrator and the victim. That is, the D.C. statute Barnes previously violated does not have as an element the use of force committed by one of the persons enumerated in 18 U.S.C. § 921(a)(33)(ii). To me, the analysis ends there. Appellant's record offense is not included within the statutory definition, and the judgment appealed from cannot stand.

The United States argues that Congress's use of the word "element," as opposed to "elements," means that the gravamen of the underlying offense needs to include only the use of force or threatened use of force with an extra-statutory finding that the forbidden use or threat of force was committed by a person who bears the relevant relationship. This argument has been accepted by our District Court, the majority today, and at least one other circuit. *See United States v. Meade*, 175 F.3d 215, 219 (1st Cir.1999); *see also United States v. Smith*, 171 F.3d 617, 620 (8th Cir.1999) (alluding to the "singular term 'element'" but with little supporting or elucidating reasoning). Nonetheless, with due respect to all the judges who have concluded otherwise, I find the argument not only unconvincing, but largely meaningless. For the argument today is not how many elements are involved, but what the singular element is.

As *Meade* properly describes it, that singular word "element" refers "to the immediately following attribute." *Meade*, 175 F.3d at 219. Just so, but so what? The restatement of "element" as "attribute" begs the question of what single element-turned-attribute the statute requires. Just as an element might be either simple or complex and remain a single element, so might an attribute. For example, if a purchaser were to express a strong desire to own a pickup truck which has as an attribute tires manufactured by an American company, that purchaser would not likely be satisfied to sign a contract of purchase specifying only that the truck "have as an attribute tires," leaving the question of their manufacturer for some discussion outside the contract. We have before us something far more important than a contract of sale. We have a penal statute. Fundamental to our fairness-centered criminal justice system is the rule of lenity for the interpretation of ambiguous penal statutes. *See, e.g., United States v. Singleton*, 182 F.3d 7, 13 & n. 12 (D.C.Cir. 1999) (collecting authorities). Under the rule of lenity, a criminal defendant is, and should be, afforded the benefit of the doubtful application of ambiguous statutory language. It cannot be gainsaid that the language of this statute is ambiguous. The majority opinion itself is rife with allusions to its ambiguity. "[S]ection 921(a)(33)(A) is not a paradigm of precise draftsmanship." Maj. Op. at 1356. "[I]f the statute read [otherwise], it would be obvious that 'committed' modifies 'offense.'" Maj. Op. at 1360. "If the Congress had more precisely articulated its intention, our task would have been easier." Maj. Op. at 1361. "[T]he Congress somewhat awkwardly included the 'committed by' phrase in subpart (ii)." Maj. Op. at 1361. The majority's grammatical and syntactical analysis defending its interpretation of the statute is quite detailed and quite skilled. But the necessity for such a detailed and skilled analysis itself illustrates the ambiguity of the words construed. I would apply the rule of lenity, and I would reverse the judgment of the District Court.

The supportive arguments offered by the government are equally unconvincing.

That a snippet of legislative history is more consistent with the less lenient application of a criminal statute hardly erodes the laudable principles of the rule of lenity. This proposition seems to me quite offensive to our historic sense of fairness in criminal law, indeed, perhaps to the Due Process Clause. Though I do not reach the constitutional argument, it seems to me most inconsistent with fundamental fairness and certainly with the rule of lenity to suppose that for a defendant to understand that his conduct is illegal, he must read not only the words of the statute, but find and construe the abstruse comments of a single senator on a single day. *See* 142 Cong. Rec. 510377–01, *510377–78 (1996).

As to the argument that the statute as I would construe it applies in fewer states than the statute as construed by the government, I frankly do not see how this proves anything at all. The government admits in its brief that the Supreme Court has held repeatedly that Congress may validly and constitutionally adopt criminal laws that apply differently in different states based upon variances in state law. *See, e.g., United States v. Sharpnack,* 355 U.S. 286, 293, 78 S.Ct. 291, 295–96, 2 L.Ed.2d 282 (1958) (holding that Congress had constitutional authority to pass the Assimilative Crimes Act, making state law applicable to federal enclaves within the states, and citing other statutes that define federal offenses based upon variances in state law); *see also United States v. Sacco,* 491 F.2d 995, 1003 (9th Cir.1974) (the fact that federal statute prohibiting illegal gambling businesses applies only in states where gambling is illegal "does not result in a denial of equality").

Finally, the majority stresses an argument based on the use of the word "committed" theorizing that "use of force" is not "committed." I would note at the outset that this is an argument not made by the parties. As a matter of first principles, I have no problem with that fact. As I have written before, the appropriate question is not whether an *argument* is raised by the parties, but whether an *issue* is properly brought before the court. " 'When an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law.' " *Eldred v. Reno,* 239 F.3d 372, 384 (D.C.Cir. 2001) (Sentelle, J., dissenting) (quoting *United States Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc.,* 508 U.S. 439, 446, 113 S.Ct. 2173, 2178, 124 L.Ed.2d 402 (1993)). However, the majority's reliance upon an argument not made by the parties is at least arguably in conflict with circuit law. *See Seattle Opera v. NLRB,* 292 F.3d 757, at 763 & n.8 (D.C.Cir.2002). Nonetheless, even if we treat the argument as properly before us, I find it unconvincing. I see no reason beyond the majority's *ipse dixit* to conclude that the "use of force" is not "committed" by the related person.

In short, I respectfully dissent.