**UNITED STATES of America,**
**Appellant,**

v.

**Kurt KAVOUKIAN, Defendant–**
**Appellee.**

Docket No. 02–1051.

United States Court of Appeals,
Second Circuit.

Argued: Dec. 19, 2002.

Decided: Dec. 31, 2002.

Barbara D. Cottrell, Assistant United States Attorney (Joseph A. Pavone, United States Attorney for the Northern District of New York, Paul D. Silver and Edward P. Grogen, Assistant United States Attorneys, on the brief), Albany, NY, for appellant.

Paul Evangelista (Molly Corbett, on the brief), Assistant Federal Public Defender's Office, Albany, NY, for defendant-appellee.

Before: FEINBERG, MESKILL, and CALABRESI, Circuit Judges.

CALABRESI, Circuit Judge.

## I.

In 1996, Defendant Kurt Kavoukian pleaded guilty in a New York County Court to a state charge of Menacing in the Second Degree.[1] At the plea hearing, De-

---

**1.** N.Y. Penal Law § 120.14 reads as follows:

Menacing in the second degree

A person is guilty of menacing in the second degree when:

1. He or she intentionally places or attempts to place another person in reasonable fear of physical injury, serious physical injury or death by displaying a deadly weapon, dangerous instrument or what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm; or

2. He or she repeatedly follows a person or engages in a course of conduct or repeatedly commits acts over a period of time intentionally placing or attempting to place another person in reasonable fear of physical injury, serious physical injury or death; or

3. He or she commits the crime of menacing in the third degree in violation of that part of a duly served order of protection, or such order which the defendant has actual knowledge of because he or she was present in court when such order was issued, pursuant to article eight of the family court act, section 530.12 of the criminal procedure law, or an order of protection issued by a court of competent jurisdiction in an-

fendant acknowledged that on July 15, 1996, he had a disagreement with a woman, and that during the disagreement he "displayed a rifle" in a "manner intended to place [the woman] in fear." Defendant was sentenced to time served and to three years' probation; in addition, the court imposed a permanent order of protection, barring Defendant from having any contact with the woman or her children. There is no information in the indictment, the plea hearing transcript, or the statement of conviction describing the nature of the relationship between Defendant and his victim.

In 2001, a federal grand jury returned a three-count indictment against Defendant; over the next months, additional counts were added, and in August 2001, a third superseding indictment was filed charging Defendant with ten counts. Counts One through Eight allege various violations of 18 U.S.C. § 922(g)(9),[2] which makes unlawful the possession of firearms by a person who has previously been convicted of a misdemeanor crime of domestic violence.

Defendant moved to dismiss the indictment as to Counts One through Eight, arguing that his state conviction for Menacing in the Second Degree did not qualify as a predicate offense, as defined in 18 U.S.C. § 921(a)(33)(A), to support the indictment as to those counts. 18 U.S.C. § 921(a)(33)(A) defines "misdemeanor crime of domestic violence" as an offense that

(i) is a misdemeanor under Federal or State law; and

(ii) has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabiting with or has cohabited with the victim as a spouse, parent, or guardian, or by a person similarly situated to a spouse, parent, or guardian of the victim.

In support of his motion, Defendant argued, inter alia, that, because the state offense to which Defendant pleaded guilty prohibits only the "intentionally plac[ing] or attempt[ing] to place another person in reasonable fear of physical injury, serious physical injury or death by *displaying* a deadly weapon," N.Y. Penal Law § 120.14 (emphasis added), it does not have as an element "the *use* or attempted *use* of physical force, or the threatened *use* of a deadly weapon" required by 18 U.S.C. § 921(a)(33)(A) (emphasis added). In addition, Defendant claimed that his state conviction does not establish the necessary predicate "misdemeanor crime of domestic violence" because neither the state statute nor the state court record established a domestic relationship between Defendant and the victim.

other state, territorial or tribal jurisdiction, which directed the respondent or defendant to stay away from the person or persons on whose behalf the order was issued.
Menacing in the second degree is a class A misdemeanor.

2. The statute, in relevant part, reads as follows:
§ 922. Unlawful acts
. . .

(g) It shall be unlawful for any person—
. . .
(9) who has been convicted in any court of a misdemeanor crime of domestic violence,
to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

Arguing against the motion to dismiss, the government asserted that "[t]he nature of the relationship between the assailant and the victim" of the state offense "need not be an element of the underlying offense. Rather, it is a question for the finder of fact at trial." The government did not address the Defendant's other argument.

The district court (Kahn, *J.*) dismissed counts One through Eight of the indictment. The court reasoned that the state menacing conviction "does not meet the requirements of § 921(a)(33)(A) because there is no element of § 120.14-01 requiring the offense be 'committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabiting with or has cohabited with the victim as a spouse, parent, or guardian, or by a person similarly situated to a spouse, parent, or guardian of the victim.'" Moreover, the court said that in order to sustain the indictment, it would be required to reexamine Defendant's state court conviction to determine whether the victim was in a domestic relationship with the Defendant. The court declined to do this, and decided instead to look only at the statement of conviction and the sentencing documents in the record. The court found this evidence insufficient to support the government's argument that Defendant had committed the required predicate "misdemeanor crime of domestic violence."

The district court denied the government's motion for reconsideration, and the government appeals. On appeal, neither side discusses at any length Defendant's first argument, not passed on by the court below, concerning the *display*, rather than the *use*, of a weapon. Each concentrates only on the alleged need for the underlying violation to have a domestic relationship as an element.

## II.

■ There is no dispute that, in order to convict the defendant of a violation of 18 U.S.C. § 922(g)(9), the prosecution will have to prove that the victim of Defendant's prior misdemeanor was in a domestic relationship with him. The question is whether 18 U.S.C. § 922(g)(9) requires that such a domestic relationship between the assailant and the victim be included *as an element* of the predicate state offense. Although we previously have not had occasion to address this question, several other circuits have considered it, and all have agreed with the government's position. *See United States v. Barnes,* 295 F.3d 1354 (D.C.Cir.2002); *United States v. Chavez,* 204 F.3d 1305, 1313-14 (11th Cir.2000); *United States v. Meade,* 175 F.3d 215, 218 (1st Cir.1999); *United States v. Smith,* 171 F.3d 617, 620 (8th Cir.1999); *see also United States v. Ball,* 7 Fed. Appx. 210, 213, 2001 WL 324624 (4th Cir.) (unpublished per curiam order), *cert. denied,* 534 U.S. 900, 122 S.Ct. 226, 151 L.Ed.2d 162 (2001). These circuits have used a variety of rationales to reach this conclusion.

Both the Eighth Circuit and the First Circuit relied in part on the fact that the statute uses the singular "has, as an element" to introduce the requirement of the predicate offense. *Smith,* 171 F.3d at 620; *Meade,* 175 F.3d at 218-19. This, they conclude, is evidence that Congress meant to require that only a single element—the use or attempted use of physical force—be part of the predicate offense. As the Eighth Circuit noted,

[i]n the statute at issue, the singular term "element" modifies the phrase "the use or attempted use of physical force ...." If Congress meant the predicate misdemeanor to have two elements, it

would have used the plural form of "element."

*Smith,* 171 F.3d at 620.

The D.C. Circuit relied on a different textual argument, examining the relationship among the phrases "an offense," "use of physical force," and "committed by." It concluded that "committed by" necessarily referred back to "an offense" rather than to "use of physical force":

> The verb "commit" means "to do (something wrong or reprehensible), to perpetrate, be guilty of (a crime or *offence,* etc.)." *Oxford English Dictionary* 559 (2d ed.1989) (emphasis added). The *use* of force is not "committed," "done" or "perpetrated." An *"offense"* is "committed" or "perpetrated." And here, the offense of a "misdemeanor crime of domestic violence" must be committed by a person in one of the specific relationships.... In short, a "misdemeanor crime of domestic violence" means an offense that is a misdemeanor, has, as an element, the use of force and was committed by a person with the requisite relationship.

*Barnes,* 295 F.3d at 1360 (footnotes omitted).

The D.C. Circuit and the First Circuit also gave an additional reason for their holdings. They took the pragmatic view that a contrary interpretation of the statute "would create a 'significant practical anomaly,' rendering the law a nullity in a majority of the states as well as at the Federal level." *Id.* at 1364 (citing *Meade,* 175 F.3d at 220):

> Fewer than half of the states currently have a "domestic assault" statute that expressly includes as elements both the use of force and a specific relationship between the offender and victim. Most states, and the District of Columbia, charge domestic violence offenders under general assault statutes.... More-

over, [the defendant's] interpretation would make section 921(a)(33)(A)(i)'s reference to a misdemeanor under "Federal law" a nullity because there is no federal misdemeanor that includes both the use of force and the domestic relationship as express elements.

*Id.* at 1364–65 (footnote omitted).

Finally, several circuits concluded that the statute's legislative history clears up any possible ambiguity as to its meaning. In perhaps the most convincing resort to legislative history, the D.C. Circuit in *Barnes* quoted from the amendment's sponsor, who addressed this question directly:

> [T]he final agreement does not merely make it against the law for someone convicted of a misdemeanor crime of domestic violence from possessing firearms. It also incorporates this new category of offenders into the Brady law, which provides for a waiting period for handgun purchases. Under the Brady law, local law enforcement authorities are required to make reasonable efforts to ensure that those who are seeking to purchase a handgun are not prohibited under Federal law from doing so. Mr. President, convictions for domestic violence-related crimes often are for crimes, *such as assault, that are not explicitly identified as related to domestic violence.* Therefore, *it will not always be possible for law enforcement authorities to determine from the face of someone's criminal record whether a particular misdemeanor conviction involves domestic violence,* as defined in the new law.

*Barnes,* 295 F.3d at 1365 (quoting 142 Cong. Rec. S11872–01, *S11878 (1996) (Statement of Sen. Lautenberg) (second emphasis added)). *See also Smith,* 171 F.3d at 620 (quoting 142 Cong. Rec.

S11872–01, *S11878 (1996)); *Meade*, 175 F.3d at 220 (noting that Senator Lautenberg also urged "local law enforcement authorities administering gun registration provisions 'to thoroughly investigate misdemeanor convictions on an applicant's criminal record to ensure that none involves domestic violence, before allowing the sale of a handgun" ' (quoting 142 Cong. Rec. S11878 (1996))).

We note one additional passage from Senator Lautenberg's statement, in which he explains the origin of the statute's "has, as an element" language:

> [T]he revised language includes a new definition of the crimes for which the gun ban will be imposed. Under the original version, these were defined as crimes of violence against certain individuals, essentially family members. Some argued that the term crime of violence was too broad, and could be interpreted to include an act such as cutting up a credit card with a pair of scissors. Although this concern seemed farfetched to me, I did agree to a new definition of covered crimes that is more precise, and probably broader.
>
> Under the final agreement, the ban applies to crimes that have, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon. This is an improvement over the earlier version, which did not explicitly include within the ban crimes involving an attempt to use force, or the threatened use of a weapon, if such an attempt or threat did not also involve actual physical violence. In my view, anyone who attempts or threatens violence against a loved one has demonstrated that he or she poses an unacceptable risk, and should be prohibited from possessing firearms.

142 Cong. Rec. S11872–01, *S11877 (1996) (Statement of Sen. Lautenberg). This statement clearly indicates that the "has as an element" language was intended, not to distinguish, say, "assault" from "domestic assault," but rather to distinguish, for example, "assault" from "credit-card cutting."

Defendant nevertheless argues that the language of the statute is at best ambiguous, and therefore the rule of lenity should apply. We reject this suggestion.

 "The rule of lenity is that in criminal prosecutions, ambiguities in a statute are resolved in the defendant's favor." *Lurie v. Wittner*, 228 F.3d 113, 125 (2d Cir.2000) (internal punctuation and citation omitted). Under this Circuit's precedent, however, and following the guidance of the Supreme Court, the rule of lenity is not applicable where, as here, Congress's intention can be discovered:

> [The rule of lenity] "is reserved for those situations in which a reasonable doubt persists about a statute's intended scope even *after* resort to the language and structure, legislative history, and motivating policies of the statute."

*Id.* (some internal punctuation omitted) (quoting *Moskal v. United States*, 498 U.S. 103, 108, 111 S.Ct. 461, 112 L.Ed.2d 449 (1990)); *Bifulco v. United States*, 447 U.S. 381, 387, 100 S.Ct. 2247, 65 L.Ed.2d 205 (1980). Stated another way, "[t]he rule of lenity applies where there exists a grievous ambiguity in a statute, such that after seizing everything from which aid can be derived, a court can make no more than a guess as to what Congress intended." *United States v. Cohen*, 260 F.3d 68, 76 (2d Cir.2001) (internal quotation marks and citation omitted). In the instant case, a convincing argument has been made that the plain language of the statute expresses Congress's intention that only the mode of aggression is required as an element of the predicate offense of conviction. The legislative history affirms that reading conclu-

sively.[3] The rule of lenity is, therefore, inapplicable.

■ Defendant also attacks, on vagueness grounds, the interpretation of § 922(g)(9) that we adopt today. However, we agree with the other circuits that have considered the issue that the statute is sufficiently clear to avoid any vagueness problems. *See Barnes,* 295 F.3d at 1366; *Meade,* 175 F.3d at 222; *Smith,* 171 F.3d at 622.

### III.

■ Finally, we make one observation with respect to the indictment. Despite their disagreement about the elements required in the underlying offense, the parties do not dispute that the government will be required to prove at trial that the victim of Defendant's prior menacing conviction was in a domestic relationship with him. That is, even accepting the government's definition of "misdemeanor crime of domestic violence," the government, to make its case at trial, will have to prove (1) that the defendant was previously convicted of a misdemeanor that has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon; (2) that, subsequent to that conviction, defendant possessed certain firearms, and (3) that the victim of the defendant's prior offense was in a domestic relationship with him.[4] However, while the indictment does allege that the defendant (1) was previously convicted of menacing in the second degree, and (2) possessed certain firearms, it does not specifically state that the defendant was in a domestic relationship with the victim of his menacing offense. Instead, it simply asserts that the defendant had been "previously convicted ... of a misdemeanor crime of domestic violence, to wit, Menacing in the Second Degree." This raises the question of whether the indictment should allege such a domestic relationship with the victim of the prior offense as an essential element, not of the *predicate* offense, but of the *charged* offense. *See* Fed.R.Crim.P. 7(c)(1) ("The indictment ... must be a plain, concise and definite written statement of the essential facts constituting the offense charged.")

Neither party has raised this issue, here or below. Nevertheless, we note it and suggest that, on remand, the district court consider whether the indictment's failure to allege a domestic relationship between Defendant and the victim of his previous offense requires resubmission to the grand jury. *See Russell v. United States,* 369 U.S. 749, 770, 82 S.Ct. 1038, 8 L.Ed.2d 240 (stating that "an indictment may not be amended except by resubmission to the grand jury, unless the change is merely a matter of form"); *United States v. Cotton,* 535 U.S. 625, 122 S.Ct. 1781, 1785, 152 L.Ed.2d 860 (2002) (observing that, in *Russell,* a "proper objection had been made in the District Court to the sufficiency of the indictment"). We, of course, express no view on the issue.

### IV.

The district court's order dismissing the indictment is VACATED and the case is RE-

---

**3.** Because the district court did not address it, and because neither party discusses, at any length, the question on appeal, we express no view on Defendant's other argument below, that is, that his menacing conviction does not qualify as a predicate offense because it does not have, "as an element, the use or attempt-

ed use of physical force, or the threatened use of a deadly weapon." *See* 18 U.S.C. § 921(a)(33)(A).

**4.** The government should be allowed to use any admissible evidence to meet its burdens on those issues at trial.

MANDED for further proceedings not inconsistent with this opinion.