Reversed by Supreme Court, February 24, 2009

PUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

v.                                                   No. 06-4087

RANDY EDWARD HAYES,
          *Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of West Virginia, at Clarksburg.
Irene M. Keeley, Chief District Judge.
(1:05-cr-3-IMK-ALL)

Argued: October 27, 2006

Decided: April 16, 2007

Before WILLIAMS, MICHAEL, and KING, Circuit Judges.

---

Reversed and remanded by published opinion. Judge King wrote the majority opinion, in which Judge Michael joined. Judge Williams wrote a dissenting opinion.

---

## COUNSEL

**ARGUED:** Troy Nino Giatras, Charleston, West Virginia, for Appellant. Shawn Angus Morgan, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Clarksburg, West Virginia, for Appellee. **ON BRIEF:** Rita R. Valdrini, Acting United States Attorney, Clarksburg, West Virginia, for Appellee.

**OPINION**

KING, Circuit Judge:

Randy Edward Hayes appeals from the district court's denial of his motion to dismiss an indictment charging him with three counts of possessing firearms after having been convicted of the predicate offense of a "misdemeanor crime of domestic violence" (an "MCDV"), in violation of 18 U.S.C. §§ 922(g)(9) and 924(a)(2). *See United States v. Hayes*, No. 1:05cr03 (N.D. W. Va. June 24, 2005) (the "Order").[1] Hayes was convicted in the Northern District of West Virginia after he entered a conditional guilty plea to one of the indictment's three counts. He maintains on appeal that his predicate offense was not an MCDV as that term is defined in 18 U.S.C. § 921(a)(33)(A) (the "MCDV Definition"), and that the charges in the indictment thus fail as a matter of law. As explained below, we agree with Hayes and reverse.

I.

In 1994, Hayes pleaded guilty to a misdemeanor battery offense under West Virginia law, in the magistrate court of Marion County, West Virginia (the "1994 State Offense"). The victim of the 1994 State Offense was Hayes's then wife, Mary Ann (now Mary Carnes), with whom he lived and had a child. As a result of the 1994 State Offense, Hayes was sentenced to a year of probation.

Ten years later, on July 25, 2004, the authorities in Marion County were summoned to Hayes's home in response to a domestic violence 911 call. When police officers arrived at Hayes's home, he consented to a search thereof, and a Winchester rifle was discovered. Hayes was arrested and, on January 4, 2005, indicted in federal court on three charges of possessing firearms after having been convicted of an MCDV, in violation of 18 U.S.C. §§ 922(g)(9) and 924(a)(2).[2] Hayes

---

[1]The Order is found at J.A. 108-15. (Citations herein to "J.A. ___" refer to the contents of the Joint Appendix filed by the parties in this appeal.)

[2]The Winchester rifle found in Hayes's home was the subject of Count Three of the indictment. Hayes had sold a Marlin rifle in January or February 2004, and it was the subject of Count One of the indictment. Three additional rifles were the underpinnings of Count Two of the indictment.

filed a motion challenging the validity of the indictment and, on May 4, 2005, the grand jury returned a superseding indictment against him. The superseding indictment included the same three charges contained in the initial indictment, plus a "Notice of Additional Factors," alleging that Hayes had been convicted in West Virginia state court in 1994 on a misdemeanor battery offense that satisfied the definition of an MCDV.[3]

Hayes sought dismissal of the superseding indictment, maintaining that it was legally flawed because his 1994 State Offense was not an MCDV under federal law. On June 11, 2005, the district court, by a bench ruling, denied Hayes's motion to dismiss. On July 5, 2005, Hayes entered a conditional guilty plea to Count One of the superseding indictment,[4] pursuant to Rule 11(a)(2) of the Federal Rules of Criminal Procedure, thus reserving his right to appeal the denial of his motion to dismiss.[5] Hayes thereafter filed a timely notice of appeal, and we possess jurisdiction pursuant to 28 U.S.C. § 1291.

---

[3]The Notice of Additional Factors in the superseding indictment alleged, in relevant part:

> Defendant Randy Edward Hayes' February 24, 1994 Battery conviction, as referenced in . . . this Superseding Indictment, constituted [an MCDV] because: (a) Battery is a misdemeanor under State law in West Virginia; (b) Battery has, as an element, the use and attempted use of physical force; (c) Defendant Randy Edward Hayes committed the offense of Battery against the victim: (i) who was his current spouse; and (ii) who was a person with whom he shared a child in common; and (iii) who was cohabiting with and had cohabited with him as a spouse.

J.A. 19.

[4]Count One of the superseding indictment, on which Hayes pleaded guilty, alleged in pertinent part as follows:

> On or about January or February 2004, [in] Marion County, West Virginia, . . . Randy Edward Hayes, having been convicted in a court of [an MCDV], that is to say, on or about February 24, 1994, [he] was convicted in the Magistrate Court of Marion County of Battery; did knowingly possess in and affecting interstate commerce a firearm . . . .

J.A. 16.

[5]Rule 11(a)(2) of the Federal Rules of Criminal Procedure provides that "[w]ith the consent of the court and the government, a defendant

II.

We are presented in this appeal with a pure question of statutory interpretation: whether the MCDV Definition set forth in § 921(a)(33)(A) requires that the predicate offense underlying a § 922(g)(9) conviction have as an element a domestic relationship between the offender and the victim. We review de novo the district court's ruling on this question of law. *See United States v. Segers*, 271 F.3d 181, 183 (4th Cir. 2001).

III.

A.

Hayes maintains on appeal that the district court erred in denying his motion to dismiss the superseding indictment, in that his 1994 State Offense did not have as an element a domestic relationship, and it was thus not an MCDV. Pursuant to § 922(g)(9) of Title 18, under which Hayes was convicted, it is unlawful for any person who has been "convicted in any court of [an MCDV]" to possess a firearm. 18 U.S.C. § 922(g)(9) (the "Possession Statute"). The 1994 State Offense on which Hayes was convicted was that of simple battery, in violation of West Virginia Code section 61-2-9(c) (the "WV Statute").[6] Importantly, the WV Statute does not have as an element a domestic relationship between the offender and his victim. *See* W. Va. Code § 61-2-9.

In resolving this appeal, we must determine whether the MCDV Definition in § 921(a)(33)(A) requires that an MCDV have as an ele-

---

may enter a conditional plea of guilty . . . , reserving in writing the right to have an appellate court review an adverse determination of a specified pretrial motion. A defendant who prevails on appeal may then withdraw the plea."

[6]The WV Statute provides that "[i]f any person unlawfully and intentionally makes physical contact of an insulting or provoking nature with the person of another or unlawfully and intentionally causes physical harm to another person, he shall be guilty of a misdemeanor." W. Va. Code § 61-2-9(c).

ment a domestic relationship between the offender and the victim. The district court rejected Hayes's contention on this point, relying primarily on our unpublished decision in *United States v. Ball*, 7 Fed. Appx. 210 (4th Cir. 2001).[7] In *Ball*, we deemed the MCDV Definition to require a predicate offense to have only "one element — the use or attempted use of physical force; the relationship between the perpetrator and victim need not appear in the formal definition of the predicate offense." *Id.* at 213. As explained below, however, the MCDV Definition plainly provides, in its clause (ii), that the predicate offense must have as an element one of certain specified domestic relationships between the offender and the victim.

The statutory reading we adopt with respect to the MCDV Definition is compelled for multiple reasons. First of all, the text and structure of the MCDV Definition plainly require that a predicate offense have as an element one of the specified domestic relationships between the offender and the victim. This reading is also supported by the rule of the last antecedent and is not inconsistent with Congress's use of the singular term "element" in the MCDV Definition. Second, the statutory language of the MCDV Definition is not demonstrably at odds with the legislative intent underlying its adoption by Congress. Finally, even if the MCDV Definition could be deemed ambiguous, the rule of lenity mandates that any such ambiguity be resolved in Hayes's favor. Because the WV Statute has no domestic relationship element, and because such an underpinning is essential to the existence of an MCDV, Hayes's motion to dismiss the superseding indictment should have been granted.

B.

1.

It is elementary, of course, that the starting point for an issue of statutory interpretation is the language of the statute itself. *See United States v. Abuagla*, 336 F.3d 277, 278 (4th Cir. 2003). In that regard,

---

[7]*Ball* is not controlling precedent in this case. *See* 4th Cir. R. 32.1 (citations to unpublished decisions issued prior to January 1, 2007, are disfavored). In any event, we are convinced, on the basis of the position explained herein, that *Ball* was not correctly decided.

"[w]e must first determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute . . . [and] our inquiry must cease if the statutory language is unambiguous and the statutory scheme is coherent and consistent." *Id.* (internal quotation marks omitted). We assess whether statutory language is plain or ambiguous through our "reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997). "The plain meaning of legislation should be conclusive, except in the rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." *United States v. Ron Pair Enters., Inc.* 489 U.S. 235, 242 (1989) (internal quotation marks omitted).

In this situation, the MCDV Definition mandates that a predicate offense be a misdemeanor and have as an element the use of force committed by a person in a domestic relationship with the victim. *See* 18 U.S.C. § 921(a)(33)(A). More specifically, the MCDV Definition provides:

> (33)(A) Except as provided in subparagraph (C), the term "misdemeanor crime of domestic violence" means an offense that —
>
>> (i) is a misdemeanor under Federal or State law; and
>>
>> (ii) has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabiting with or has cohabited with the victim as a spouse, parent, or guardian, or by a person similarly situated to a spouse, parent, or guardian of the victim[.]

*Id.* As is readily apparent, the MCDV Definition is structured as a statement of what is being defined, followed by a parallel list of two essential attributes. After identifying the term "misdemeanor crime of

domestic violence" as the thing being defined, the MCDV Definition splits into two separate clauses. First, clause (i) provides that an MCDV must be "a misdemeanor under Federal or State law." *Id.* § 921(a)(33)(A)(i). Next, clause (ii) of the MCDV Definition — the crux of the dispute here — provides that an MCDV must have "as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse, parent, or guardian of the victim." *Id.* § 921(a)(33)(A)(ii).

It is significant that a semicolon has been placed at the end of the MCDV Definition's clause (i), indicating that the attribute contained therein is to be separate and distinct from the attribute contained in clause (ii). *See United States v. Naftalin*, 441 U.S. 768, 774 n.5 (1979) (recognizing that punctuation is not always decisive, but finding significant "the use of separate numbers to introduce each subsection, and the fact that the phrase . . . was set off solely as part of [a separate] subsection"). Of even greater significance, there is no corresponding semicolon in the structure or text of clause (ii), and thus no indication that the second of the two attributes in the MCDV Definition somehow terminates before the words "committed by," or sets the "committed by" phrase apart from the "have, as an element" language, thereby creating a third statutory attribute. *See* 18 U.S.C. § 921(a)(33)(A). Rather, the structure of the MCDV Definition makes it clear that the "committed by" phrase is part of the second attribute, that is, clause (ii). *See* 73 Am. Jur. 2d *Statutes* § 143 ("[T]he collocation of the words and phrases in a statute is sometimes an aid in the construction therein, and should not be arbitrarily disregarded [unless] the intention of the legislature requires it to be disregarded.").

If Congress, in drafting the MCDV Definition, had seen fit to place the second half of clause (ii) — that is, the words "committed by a current or former spouse, parent, or guardian of the victim" — in a separate clause, we might very well accept the Government's contention. However, that is not the statutory provision we are called upon to assess. Here, the "committed by" phrase in clause (ii) was not set apart by Congress, and the MCDV Definition thus does not restrict the clause's "has, as an element" language to only the first half thereof, that is, the "use or attempted use of physical force, or the threatened use of a deadly weapon."

2.

As further support for our conclusion here, the reading explained above is compelled by the longstanding "grammatical rule of the last antecedent." *See Barnhart v. Thomas*, 540 U.S. 20, 26 (2003). As the Supreme Court recently explained, pursuant to that rule "a limiting clause or phrase . . . should ordinarily be read as modifying only the noun or phrase that it immediately follows." *See id.*; *see also* 73 Am. Jur. 2d *Statutes* § 138 ("Qualifying words, phrases, and clauses are ordinarily confined to the last antecedent, or the words and phrases immediately preceding."). The most important phrase of the MCDV Definition for our analysis, that is, the "committed by" phrase in the second half of clause (ii), must be read to modify its last antecedent, that is, the phrase in the first half of that clause, "use or attempted use of physical force, or the threatened use of a deadly weapon." That phrase — not the noun "offense" — is the language the "committed by" phrase immediately follows. *See* 18 U.S.C. § 921(a)(33)(A). Not only is the noun "offense" not the noun or phrase immediately preceding the "committed by" phrase; the noun "offense" does not even appear in the same clause as the "committed by" phrase. *See id.* Instead, the noun "offense" appears at the beginning of subparagraph (A) of the MCDV Definition, and it is separated from the "committed by" phrase by both clause (i) and the first half of clause (ii). *See id.* Thus, under the grammatical rule of the last antecedent, the "committed by" phrase cannot be limited to modifying only the noun "offense."

In *United States v. Barnes*, the D.C. Circuit faced the issue we address today, and it did not find the rule of the last antecedent to be controlling. *See* 295 F.3d 1354, 1360 (D.C. Cir. 2002). It instead held that the MCDV Definition does not require that a predicate offense have as an element a domestic relationship between the offender and his victim, relying on its conclusion that the rule of the last antecedent is "not an inflexible rule, and is not applied where the context indicates otherwise." *See id.* (citing *United States v. Pritchett*, 470 F.2d 455, 459 (D.C. Cir. 1972)). After so concluding, the court observed that one does not commit a "use of force"; rather, one commits an "offense." *See id.* According to the *Barnes* majority, because offenses are committed, and the use of force is not, the second half of clause (ii), the "committed by" phrase, could modify the noun "offense," and

does not necessarily modify the "use of force" phrase. *See id.*; *see also United States v. Belless*, 338 F.3d 1063, 1066 (9th Cir. 2003) ("[T]o read the 'committed by' phrase as modifying the phrase that immediately precedes it . . . would be grammatically unsound.").[8]

The explanation relied on by the *Barnes* court is, to us, a grammatically labored and erroneous reading of the MCDV Definition. *See* 73 Am. Jur. 2d *Statutes* § 140 ("[S]tatutes are generally not to be construed by strict and critical adherence to technical grammatical rules."). We are not, in these circumstances, authorized to somehow disregard the rule of the last antecedent, which requires us to read the "committed by" phrase as modifying the "use of force" phrase.

We acknowledge, of course, that our Court has heretofore recognized that compliance with the rule of the last antecedent is not always necessary or appropriate. *See In re Witt*, 113 F.3d 508, 511 (4th Cir. 1997). In *Witt*, Judge Michael observed that a particular reading is not compelled by application of the rule of the last antecedent where it is "quite plausible as a matter of common sense" that a phrase could modify more than one term or phrase. *See id.*; *see also* 73 Am. Jur. 2d *Statutes* § 138 ("The rule [of the last antecedent] is not applicable where a further extension or inclusion is clearly required by the intent and meaning of the context, or disclosed by the entire act."). That is not the situation we face, however, and our conclusion on this point is not at all inconsistent with *Witt*.[9] As we have

---

[8]In *Barnes*, Judge Sentelle spelled out, in a well-reasoned dissent, the view of the MCDV Definition that we adopt today. *See* 295 F.3d at 1368-70 (Sentelle, J., dissenting). In so doing, he relied on the plain language of the MCDV Definition to conclude that it requires a predicate offense to have as an element a domestic relationship. *See id.* at 1368-69. In addressing Congress's use of the singular rather than the plural of "element," Judge Sentelle deemed the distinction "largely meaningless," aptly observing that "the argument . . . is not how many elements are involved, but what the singular element is." *Id.* at 1369. He then concluded that the rule of lenity should also apply, and rejected the contention that the statute's legislative history evinces a clear congressional intent that precludes application thereof. *See id.* at 1369-70.

[9]In *Witt*, a bankruptcy case, we were asked to interpret the statutory provision "the plan may provide for the *payment* of the *claim as modified*

explained, it is entirely implausible for the "committed by" phrase of clause (ii) of the MCDV Definition to modify a noun ("offense") not even appearing in that clause, to the total exclusion of the phrase immediately preceding it. *Cf. United States v. Naftalin*, 441 U.S. 768, 774 n.5 (1979) (observing that placement of phrase in separate subsection indicates phrase was not intended to modify earlier subsections).

The difference between a reading that is compelled by the rule of the last antecedent, on the one hand, and one that is not so compelled, on the other, is readily illustrated in the context of the MCDV Definition. If the Government had contended, for instance, that the rule of the last antecedent required a reading that the "committed by" phrase modifies only the words "threatened use of a deadly weapon," and not the entire phrase "use or attempted use of physical force, or the threatened use of a deadly weapon," we would reject that contention. It is "quite plausible as a matter of common sense" that the "committed by" phrase modifies the words "use or attempted use of physical force" as well as the words "the threatened use of a deadly weapon." As a result, we could swiftly dismiss any contention that the Government is only required to prove a domestic relationship where the predicate offense involved the use of a deadly weapon. Such a reading would not be compelled because the "committed by" phrase is plausibly read to modify the entire phrase "use or attempted use of physical force, or the threatened use of a deadly weapon." Conversely, it defies common sense to accept the proposition that the "committed by" phrase does not modify the phrase immediately preceding it, but does,

---

*pursuant to [the statute]*" to determine whether the phrase "as modified pursuant to [the statute]" described the noun "payment" or the noun "claim." *See* 113 F.3d at 510-11. We concluded, in favor of the creditor, that although the last antecedent was the noun "claim," the noun "payment" was the noun modified by the phrase "as modified pursuant to the statute." *See id.* at 512. In so ruling, we decided that the rule of the last antecedent was not controlling. *See id.* at 511. First, the noun "claim" was part of the prepositional phrase "of the claim," which modified the noun "payment." *See id.* Second, the rule of the last antecedent did not compel the debtor's proposed reading because it would have rendered the noun "payment" superfluous. *See id.* at 511-12.

on the other hand, modify the term "offense." Such a reading cannot be reached without ignoring the distance separating the noun "offense" from the "committed by" phrase, as well as the structural segregation of the noun "offense" from its purported modifier. Because the reading Hayes espouses *is* compelled by the rule of the last antecedent, the "committed by" phrase must be read to modify the phrase "use or attempted use of physical force, or the threatened use of a deadly weapon," and as not modifying the noun "offense."

3.

Contrary to the position of the Government, Congress's use of the singular term "element" does not support its contention that a domestic relationship need not be an element of a predicate offense to constitute an MCDV. In *United States v. Belless*, the Ninth Circuit decided that the singular term "element" supports the proposition that the MCDV Definition requires that the predicate offense have only the single element of "the use of physical force." 338 F.3d 1063, 1066 (9th Cir. 2003); *accord United States v. Heckenliable*, 446 F.3d 1048, 1050 (10th Cir. 2006); *United States v. Meade*, 175 F.3d 215, 218-19 (1st Cir. 1999); *United States v. Smith*, 171 F.3d 617, 620 (8th Cir. 1999). We are not convinced, however, that Congress's use of the singular term "element" is of any significance to our interpretation of the MCDV Definition. Whether a thing is an element does not depend simply upon its label. *See Apprendi v. New Jersey*, 530 U.S. 466, 494 (2000) ("[I]t does not matter [how] the required finding is characterized . . . , because labels do not afford an acceptable answer." (internal quotation marks omitted)). Rather, a thing is an element if it is necessary to a claim or offense. *See Black's Law Dictionary* 559 (8th ed. 2004) (defining element as "[a] constituent part of a claim that must be proved for the claim to succeed"); *see also* Model Penal Code § 1.13 ("[An] 'element of an offense' means (i) such conduct or (ii) such attendant circumstances or (iii) such a result of conduct as . . . is included in the description of the forbidden conduct in the definition of the offense.").

There are multiple examples of statutory provisions that contain an "element" requiring that discrete facts be established to sustain an offense. For example, a "crime of violence" — defined by statute as an offense that "has as an element the use, attempted use, or threat-

ened use of physical force against the person or property of another"
— has three essential components: (1) that one uses, threatens, or
attempts to use force (2) that is physical (3) against another person or
his property. *See, e.g.*, 18 U.S.C. §§ 16(a), 924(c)(3)(A). Likewise,
even under the Government's proposed reading here, the MCDV Def-
inition contains an example of an "element" that possesses discrete
factual requirements. *See* 18 U.S.C. § 921(a)(33)(A)(ii). The words
"threatened use of a deadly weapon" in clause (ii) of the MCDV Defi-
nition have three essential components: (1) that one has threatened to
use (2) a weapon (3) that is deadly. *See id.* Thus, we readily agree
with Judge Sentelle's *Barnes* dissent, where he aptly characterized
Congress's use of the singular rather than the plural form of "element"
as "largely meaningless," and framed the argument in terms of "not
how many elements are involved, but what the singular element is."
*See United States v. Barnes*, 295 F.3d 1354, 1369 (D.C. Cir. 2002)
(Sentelle, J., dissenting); *see also supra* note 8.

## C.

The Government's effort to rely on legislative history to support its
position on the MCDV Definition is also unavailing. The natural
reading of the MCDV Definition requires that the predicate offense
have as an element a relationship component, and we are obliged to
apply the statute as it is written, unless the "literal application of [the]
statute will produce a result demonstrably at odds with the intentions
of its drafters." *United States v. Ron Pair Enters., Inc.* 489 U.S. 235,
242 (1989) (internal quotation marks omitted). As explained below,
the literal application of the plain language of the MCDV Definition
is not "demonstrably at odds" with congressional intent.

In analyzing legislative history, it is proper to conduct a thorough
examination of the entire history of the legislation, from introduction
to passage. *See Regan v. Wald*, 468 U.S. 222, 238 (1984) (conducting
"full examination of the legislative history — the Subcommittee hear-
ings, markup sessions, floor debates, and House and Senate Reports"
— to determine legislative intent). The legislative history of the Pos-
session Statute and the MCDV Definition relied on by the Govern-
ment (and certain of our sister circuits), however, highlights one
congressional speaker only, and consequently fails to account for the
full history of the legislation. *See United States v. Barnes*, 295 F.3d

1364, 1365 (D.C. Cir. 2002) (limiting legislative history analysis to remarks of bill's sponsor in support of legislative intent determination); *United States v. Meade*, 175 F.3d 215, 219 (1st Cir. 1999) ("[The] statements, made by the principal architect of the bill before final passage, clearly demonstrate Congress's threshold understanding that 'misdemeanor crimes of domestic violence' would not be limited to those in which the relationship status was included as a formal element of the statute of conviction."); *United States v. Smith*, 171 F.3d 617, 620 (8th Cir. 1999) (limiting legislative history analysis to remarks of bill's sponsor). The Supreme Court has recognized that, "ordinarily even the contemporaneous remarks of a single legislator who sponsors a bill are not controlling in analyzing legislative history." *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 118 (1980); *see also Roy v. County of Lexington*, 141 F.3d 533, 539 (4th Cir. 1998) ("The remarks of individual legislators, even sponsors of legislation . . . are not regarded as a reliable measure of congressional intent."). Thus, we are not at liberty, in analyzing congressional intent, to ignore the Court's direction that we must go beyond the remarks of the legislation's sponsor and consider the enactment's entire legislative history.

The Possession Statute, under which Hayes was convicted, was enacted on September 30, 1996, and it amended the 1968 Gun Control Act to prohibit firearm possession by any person previously convicted of an MCDV. *See* 18 U.S.C. § 922(d)(9), (g)(9). According to the bill's sponsor, Senator Lautenberg of New Jersey, the Possession Statute was intended to place domestic violence misdemeanants, who had avoided the felon-firearm prohibitions of the Gun Control Act by virtue of state statutes that typically classified domestic violence offenses as misdemeanors, on an equal footing with convicted felons, who were already prohibited by the Act from possessing firearms. *See* 142 Cong. Rec. S10377-01 (1996) (statement of Sen. Lautenberg). When introducing his bill, Senator Lautenberg stated:

> Under current Federal law, it is illegal for persons convicted of felonies to possess firearms. Yet, many people who engage in serious spousal or child abuse ultimately are not charged with or convicted of felonies. At the end of the day, due to outdated laws or thinking, perhaps after a plea bargain, they are, at most, convicted of a misdemeanor. In fact,

most of those who commit family violence are never even prosecuted. But when they are, one-third of the cases that would be considered felonies, if committed by strangers, are instead filed as misdemeanors.

*Id.* at S10377-78. Other legislators reiterated the view that the aim of the Possession Statute was to make domestic misdemeanants subject to the same firearm prohibitions as felons, regardless of the classification of domestic violence offenses as misdemeanors under state law. *See id.* at S10379 (statement of Sen. Wellstone) ("We do not let people who have been convicted of a felony purchase [a] firearm. What [Senator Lautenberg] is trying to do is plug this loophole and prohibit someone convicted of domestic abuse, whether felony or misdemeanor, [from] purchasing a firearm."); 142 Cong. Rec. S10379-01, 10380 (statement of Sen. Feinstein) ("[W]e already prohibit . . . felons from possessing a firearm. . . . [I]t is an unfortunate fact that many domestic violence offenders are never convicted of a felony. Outdated or ineffective laws often treat domestic violence as a lesser offense. . . . [P]lea bargains often result in misdemeanor convictions for what are really felony crimes.").

The relevant legislative history thus reveals that these lawmakers were focused on eliminating the loophole created by the state statutes that classified domestic violence offenses as misdemeanors, rather than as felonies. None of these congressional statements, however, directly addresses the question posed here, whether a "crime of domestic violence" — either felony or misdemeanor — would require such an offense to have, as an element, a domestic relationship between the offender and the victim. The only statement arguably on point was made by Senator Lautenberg, addressing the implementation of the enactment:

Mr. President, convictions for domestic violence-related crimes often are for crimes, such as assault, that are not explicitly identified as related to domestic violence. Therefore, it will not always be possible for law enforcement authorities to determine from the face of someone's criminal record whether a particular misdemeanor conviction involves domestic violence, as defined in the new law. . . . I would strongly urge law enforcement authorities to thor-

oughly investigate misdemeanor convictions on an applicant's criminal record to ensure that none involves domestic violence, before allowing the sale of a handgun.

142 Cong. Rec. S11872-01, S118788 (1996) (statement of Sen. Lautenberg).[10] Other than the foregoing statement, which is not controlling on this point, *see GTE Sylvania*, 447 U.S. at 118, there is no indication of any legislative intention that, despite the MCDV Definition's explicit terms to the contrary, a predicate offense need not have a domestic relationship element to qualify as an MCDV.

Additionally, there are, in this instance, clear indicia that the available legislative history is an unreliable guide to Congress's intent. As the First Circuit observed in *United States v. Hartsock*, "[b]ecause the Lautenberg Amendment was ultimately passed as a part of a last minute series of congressional maneuvers, *the legislative history concerning the statute is sparse. Indeed, neither the House nor the Senate held hearings on the statute*." 347 F.3d 1, 5 n.4 (1st Cir. 2003) (emphasis added) (citations omitted). There is thus no reliable indication in the legislative history that we should disregard the plain language of the MCDV Definition. In the face of that language, "the wisdom of Congress' action . . . is not within our province to second-guess." *Eldred v. Ashcroft*, 537 U.S. 186, 222 (2003).[11] We are thus

---

[10]Senator Lautenberg prefaced the foregoing statement by observing that his proposal "incorporates this new category of offenders into the Brady law, which provides for a waiting period for handgun purchases [and requires] local law enforcement authorities to make reasonable efforts to ensure that those who are seeking to purchase a handgun are not prohibited under Federal law from doing so." 142 Cong. Rec. S11872-01, S118788 (1996).

[11]Indeed, there is more than a thread of wisdom in requiring that the predicate offense, in order to be an MCDV, have as an element a domestic relationship. Requiring a domestic relationship element will avoid debate years later — in these circumstances, a full ten years later — about the nature of the relationship between an offender and his victim. Here, there is no dispute that Hayes and Mary Carnes were married and had a child at the time of his 1994 State Offense. In other cases, however, the relationship between the offender and his victim will likely be a subject of dispute. *See, e.g.*, *White v. Dep't of Justice*, 328 F.3d 1361,

unable to read the MCDV Definition, as the Government would have us do, without rewriting it to eliminate the text and structure that Congress used, and we are not permitted to rewrite the MCDV Definition to say what *we think* Congress meant. We are instead obliged to apply its plain language. We must therefore reject the Government's contention that the legislative history evinces a clear congressional intent which excuses us from applying the plain language of the MCDV Definition.

D.

Although this appeal can be readily disposed of on the basis of the foregoing analysis, one additional point warrants our attention, that is, the rule of lenity. If we were to accept the proposition that some ambiguity exists in the MCDV Definition, the well-settled rule of lenity would require us to resolve any such ambiguity in favor of Hayes. As the Supreme Court has observed, "ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity." *Cleveland v. United States*, 531 U.S. 12, 25 (2000) (internal quotation marks omitted). "The rule of lenity is premised on two ideas: First, a fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed; second, legislatures and not courts should define criminal activity." *Babbitt v. Sweet Home Chapter of Cmtys. for a Great Or.*, 515 U.S. 687, 704 n.18 (1995) (internal quotation marks omitted); *see also* 73 Am. Jur. 2d *Statutes* § 197 ("[The rule of lenity] protects the individual against arbitrary discretion by officials and judges, and guards against judicial usurpation of the legislative function which would result from enforcement of penalties when the legislative branch did not clearly prescribe them.").

---

1369 (Fed. Cir. 2003) (considering whether substantial evidence supported finding that offender had cohabited with victim as a spouse or been a person similarly situated to a spouse but ultimately finding cohabitation "overwhelmingly supported" by evidence). *But see United States v. Meade*, 175 F.3d 215, 222 n.1 (1st Cir. 1999) ("Federal criminal trials typically involve proof and differential fact finding, and the issue of relationship status is by no means outside a jury's competence.").

Thus, even if we were unable to conclude, on the basis of the plain language of the MCDV Definition, that a predicate offense must have as an element a domestic relationship in order to constitute an MCDV, we would be obliged by the rule of lenity to resolve any such ambiguity in favor of Hayes. Contrary to the assertions of some courts, *see, e.g.*, *United States v. Meade*, 175 F.3d 215, 222 (1st Cir. 1999), there is simply no clear congressional intent that permits us to disregard the rule of lenity and its commendable aims. As Judge Sentelle aptly observed on this very point:

> That a snippet of legislative history is more consistent with the less lenient application of a criminal statute hardly erodes the laudable principles of the rule of lenity. . . . [I]t seems to me most inconsistent with fundamental fairness and certainly with the rule of lenity to suppose that for a defendant to understand that his conduct is illegal, he must read not only the words of the statute, but find and construe the abstruse comments of a single senator on a single day.

*United States v. Barnes*, 295 F.3d 1354, 1370 (D.C. Cir. 2002) (Sentelle, J., dissenting). To read the MCDV Definition as the Government suggests would subject individuals to prosecution and possible conviction under the Possession Statute without fair warning, and would be a usurpation of the congressional function. In sum, were there ambiguity in the MCDV Definition, we would nonetheless be obliged, by virtue of the rule of lenity, to rule as we do today, that is, that a predicate offense must, in order to qualify as an MCDV, have as an element a domestic relationship.[12]

---

[12]In ruling as we do today, we recognize that we are in the minority on this issue, in that several of our sister circuits have ruled that the predicate offense need not, in order to be an MCDV, contain a domestic relationship element. *See United States v. Heckenliable*, 446 F.3d 1048, 1049 (10th Cir. 2006); *United States v. Belless*, 338 F.3d 1063, 1067 (9th Cir. 2003); *White v. Dep't of Justice*, 328 F.3d 1361, 1367 (Fed. Cir. 2003); *United States v. Shelton*, 325 F.3d 553, 562 (5th Cir. 2003); *United States v. Barnes*, 295 F.3d 1354, 1365-66 (D.C. Cir. 2002); *United States v. Chavez*, 204 F.3d 1305, 1313-14 (11th Cir. 2000); *United States v. Meade*, 175 F.3d 215, 219 (1st Cir. 1999); *United States v. Smith*, 171 F.3d 617, 620 (8th Cir. 1999).

IV.

Pursuant to the foregoing, we reverse the denial of the motion to dismiss the superseding indictment and remand for such further proceedings as may be appropriate, including the withdrawal of Hayes's guilty plea on Count One, *see* Fed. R. Crim. P. 11(a)(2), and dismissal of the superseding indictment.[13]

*REVERSED AND REMANDED*

WILLIAMS, Circuit Judge, dissenting:

I would affirm the district court. Respectfully, I disagree with the majority that our sister circuits have erred in concluding that 18 U.S.C.A. § 921(a)(33)(A) (West 2000 & 2006) plainly requires that only the mode of aggression, and not the relationship status between the perpetrator and the victim, must be an element of the predicate misdemeanor offense. In addition, I find no merit in Hayes's contention that the Government may not prove the existence of a domestic relationship through evidence other than the state court's charging papers and record of his guilty plea.

In ruling as we do today, we are not *in* the minority on this issue, we *are* the minority. The nine circuits that have considered the question in a published opinion have uniformly rejected the interpretation advanced by the majority. *See United States v. Heckenliable*, 446 F.3d 1048, 1049 (10th Cir. 2006); *United States v. Belless*, 338 F.3d 1063, 1067 (9th Cir. 2003); *White v. Dept. of Justice*, 328 F.3d 1361, 1364-67 (Fed. Cir. 2003); *United States v. Shelton*, 325 F.3d 553, 562 (5th Cir. 2003); *United States v. Barnes*, 295 F.3d 1354, 1358-61 (D.C. Cir. 2002); *United States v. Kavoukian*, 315 F.3d 139, 142-44 (2d Cir. 2002); *United States v. Chavez*, 204 F.3d 1305, 1313-14 (11th Cir. 2000); *United States v. Meade*, 175 F.3d 215, 218-21 (1st Cir. 1999); *United States v. Smith*, 171 F.3d 617, 619-21 (8th Cir. 1999).[1] Accordingly, I respectfully dissent.

---

[13]Hayes also maintains on appeal that the Government was not entitled to use extrinsic evidence to prove the 1994 relationship between him and Mary Carnes. Because we agree with his contention on the MCDV issue, we need not reach and address his additional contention.

[1]A panel of this court has likewise refuted the majority's interpretation, albeit in an unpublished opinion. *See United States v. Ball*, 7 Fed. App'x

I.

Section 921(a)(33)(A) defines a "misdemeanor crime of domestic violence" ("MCDV") as follows:

> Except as provided in subparagraph (C), the term "misdemeanor crime of domestic violence" means an offense that —
>
>> (i) is a misdemeanor under Federal or State law; and
>>
>> (ii) has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabitating with or has cohabited with the victim as a spouse, parent, or guardian, or by a person similarly situated to a spouse, parent, or guardian of the victim[.][2]

18 U.S.C.A. § 921(a)(33)(A). Thus, the statutory definition divides the term into two separately defined components — subsection (i) explains what Congress meant by "misdemeanor," and subsection (ii) defines "crime of domestic violence." My colleagues derive their interpretation of the MCDV definition from the following observa-

210, 213 (4th Cir. 2001) (unpublished) (concluding that "[s]ection 921(a)(33)(A) requires the predicate offense to have only one element - the use or attempted use of physical force; the relationship between perpetrator and victim need not appear in the formal definition of the predicate offense"). Unpublished decisions, of course, lack precedential value, and I reference *Ball* simply to illustrate the overwhelming consensus that existed prior to the majority's decision in the case before us. *See* 4th Cir. R. 32.1 (citations to unpublished decisions issued prior to January 1, 2007 are permitted, but disfavored).

[2]Interestingly, Congress did not place a period at the end of this sentence.

tions: (1) Congress employed this bifurcated approach; (2) the "committed by . . ." phrase forms part of the second subsection; and (3) the two sentence fragments in § 921(a)(33)(A)(ii) are not separated by a semicolon. With all due respect, however, observation is not analysis. For, the reasons that follow, I believe the structure of § 921(a)(33)(A)(ii) cannot support the weight the majority would have it bear.

"Our first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997). Questions concerning the plainness or the ambiguity of the statutory language are resolved "by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Id.* at 341.

As explained above, the statute bifurcates the MCDV definition into two separately defined components. Section 921(a)(33)(A)(i) defines "misdemeanor" and § 921(a)(33)(A)(ii) sets forth the criteria necessary for an offense to qualify as a "crime of domestic violence." The language of § 921(a)(33)(A)(ii), read in its natural and obvious sense, supports only one interpretation — that § 921(a)(33)(A)(ii) requires the predicate offense to have, as, an element, the use or attempted use of physical force (or the threatened use of a deadly weapon), and to have been committed by a person who has one of the enumerated relationships with the victim. Thus, the statute unambiguously requires that only the mode of aggression, and not the relationship status between the perpetrator and the victim, be included in the formal definition of the predicate misdemeanor offense.

It is significant that Congress used the singular noun "element" immediately preceding the first of two conceptually distinct attributes. *See, e.g.*, *Meade*, 175 F.3d at 218-19. The use of force and the relationship between the aggressor and the victim "are two very different things, and thus would constitute two different elements." *Belless*, 338 F.3d at 1066. Had Congress intended that both requirements be mandatory elements of the predicate offense, it would have used the plural word "elements," or employed its often-used phrase "has as its elements," to encompass both requirements. *See Barnes*, 295 F.3d at

1363; *accord Meade*, 175 F.3d at 219; *Belless*, 338 F.3d at 1066; *Heckenliable*, 446 F.3d at 1050.

The majority's narrow focus on the placement of punctuation marks distorts the plain meaning of the statutory language and rests ultimately on a misconstruction of Supreme Court precedent. In *United States v. Naftalin*, 441 U.S. 768 (1979), the Supreme Court simply noted that "matters like punctuation are not decisive of the construction of a statute," but "where they reaffirm conclusions drawn from the words themselves they provide useful confirmation." 441 U.S. at 774 n.5 (internal quotation marks and alteration omitted). The majority draws no conclusions from the words themselves (other than deeming the use of the singular word "element" insignificant), basing its decision instead on the placement of the "committed by" phrase in the second of two subsections separated by a semicolon.

My colleagues' reliance on the rule of the last antecedent is likewise misguided. As the majority acknowledges, "a particular reading is not compelled by application of the rule of the last antecedent where it is 'quite plausible as a matter of common sense' that a phrase could modify more than one term or phrase." *Ante* at 9 (citing *In re Witt*, 113 F.3d 508, 511 (4th Cir. 1997)); *see also Barnhart v. Thomas*, 540 U.S. 20, 26 (2003) (stating that the rule of the last antecedent "is not absolute and can assuredly be overcome by other indicia of meaning"). The majority asserts that an interpretation consistent with the rule of the last antecedent is compelled by the distance separating the "committed by" phrase from the word "offense." The opinion cites no support for this proposition, however, and I can conceive of none. As discussed above, to determine whether reliance on the rule of the last antecedent is appropriate, we look to whether *other indicia of meaning* suggest that a syntactically disfavored construction is plausible, not to the distance between words.

In addition, I note that the majority's approach creates a significant practical anomaly that undermines Congress's goals in enacting 18 U.S.C.A. § 922(g)(9) (West 2000). When Congress enacted § 922(g)(9), fewer than half of the states had misdemeanor statutes that formally included relationship status as an element of a misdemeanor domestic assault offense; most states charged domestic violence offenders under their general assault statutes. *See e.g.*,

*Heckenliable*, 446 F.3d at 1051-52. In my view, it is unlikely that Congress sought to address a nationwide issue by enacting legislation that would immediately become a dead letter in a majority of the states.[3]

II.

Because the statute has a plain and unambiguous meaning with regard to the particular dispute at issue in this case, and the statutory scheme is coherent and consistent, resort to the legislative history is unnecessary. *See Robinson*, 519 U.S. at 340 ("Our inquiry must cease if the statutory language is unambiguous and the statutory scheme is coherent and consistent" (internal quotation marks omitted)). Accordingly, I do not fault the majority's decision not to rely on the statute's legislative history.

I am forced, however, to take issue with my colleagues' unwillingness to concede that the available legislative history is more than "arguably" on point. My colleagues assert that "[t]he only statement arguably on point was made by Senator Lautenberg, addressing the implementation of the enactment[.]" *Ante* at 14. Senator Lautenberg explained that because

---

[3]Although four of the five states within our jurisdiction —North Carolina, South Carolina, Virginia, and West Virginia — have misdemeanor domestic assault statutes that include both the mode of aggression and the relationship status between the perpetrator and the victim within the formal definition of the offense, *see* N.C. Gen. Stat. § 14-33(d) (2005); S.C. Code Ann. § 16-25-20 (2003 & Supp. 2006); Va. Code Ann. § 18.2-57.2 (2004 & Supp. 2006); W. Va. Code § 61-2-28 (Lexis Nexis 2005 & Supp. 2006), Maryland does not. Although Maryland has enacted a domestic violence statute, its primary focus is preventative, not punitive. Maryland Code §§ 4-501 through 5-516 of the Family Law Article authorizes courts to issue civil protective orders to victims of domestic violence and "provides for a wide variety and scope of available remedies designed to separate the parties and avoid future abuse." *Katsenelenbogen v. Katsenelenbogen*, 775 A.2d 1249, 1256 (Md. Ct. App. 2001) (internal quotation marks omitted). Perpetrators of domestic violence, of course, remain "subject to prosecution for their conduct-for assault, rape and other sexual offenses, criminal homicide, kidnapping-and, indeed, for failing to comply with relief provided in a protective order." *Id.* at 1256 n.2.

convictions for domestic violence-related crimes often are for crimes, such as assault, that are not explicitly identified as related to domestic violence[,] . . . it will not always be possible . . . to determine from the face of someone's criminal record whether a particular misdemeanor conviction involves domestic violence, as defined in the new law. . . .

142 Cong. Rec. S11872-01, *S11878 (1996). Contrary to my colleagues' characterization, I believe this comment *directly* addresses the issue of whether crimes that do not include a domestic relationship as an element qualify as MCDVs "as defined in [§ 921(a)(33)(A)]." *Id.* In addition, the legislative history reveals that § 921(a)(33)(A)(ii), as originally proposed, defined a crime of domestic violence as a "crime of violence" committed against an individual with whom the perpetrator had a domestic relationship. Some members of Congress, however, expressed concern that "crime of violence" was potentially "too broad, and could be interpreted to include an act such as cutting up a credit card with a pair of scissors." 142 Cong. Rec. S11872-01, *S11877. As a result, shortly before the statute was enacted, Congress replaced "crime of violence" with "has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon." *See id.*

### III.

Having explained the basis for my disagreement with the majority's interpretation of § 921(a)(33)(A), I now turn to the arguments advanced by Hayes. Hayes contends that the district court erred in refusing to dismiss the Superseding Indictment because the Government lacked "judicially noticeable evidence of a domestic relationship." (Appellant's Br. at 8.) This argument reflects Hayes's belief that the Government may not prove the existence of a domestic relationship through evidence other than the state court's charging papers and record of his guilty plea.[4] The district court rejected this conten-

---

[4]Hayes's argument stems from a somewhat puzzling misinterpretation of *United States v. Nobriga*, 408 F.3d 1178 (9th Cir. 2005), *withdrawn by* 433 F.3d 1090 (9th Cir. 2006). *Nobriga* held only that (1) a conviction under the "physically abuse" prong of Hawaii's "Abuse of a Family or

tion, reasoning that because the MCDV definition does not require that the relationship between the victim and the perpetrator appear in the formal definition of the offense, there existed no basis for confining the Government's method of proof to state court records. The district court went on to conclude that, because the indictment tracked the language of 18 U.S.C.A. § 922(g)(9) and properly alleged each element of the offense, the indictment was valid on its face. *See United States v. Wills*, 346 F.3d 476, 488 (4th Cir. 2003) ("An indictment returned by a legally constituted and unbiased grand jury, . . . if valid on its face, is enough to call for trial of the charges on the merits." (internal quotation marks and alteration omitted)). I find no fault with this analysis and agree with the district court that, as a result, whether the Government had sufficient evidence to prove Hayes guilty of the crime charged was a matter for the jury to decide and not a proper basis on which to challenge the indictment itself. *See Midland Asphalt Corp. v. United States*, 489 U.S. 794, 802 (1989) (stating that "[o]nly a defect so fundamental that it causes the grand jury no longer to be a grand jury, or the indictment no longer to be an indictment, gives rise to the constitutional right not to be tried").

Hayes's second argument on appeal parallels his first. He contends that the district court erred in admitting "extrinsic evidence" of a domestic relationship, because under *Shepard v. United States*, 544 U.S. 13 (2005), and *United States v. Washington*, 404 F.3d 834 (4th Cir. 2005), the charging documents, the terms of the plea agreement, the transcript of the plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented constitute the only acceptable means to prove a prior conviction.

I agree with the district court that the evidentiary limits in *Shepard* and *Washington* apply only to *judicial* fact-finding. The restrictions

---

Household Member" ("AFHM") statute was not categorically a conviction for an MCDV, because the Hawaii statute encompassed a broader range of relationships than those enumerated in § 921(a)(33)(A)(ii), and (2) because the relationship between Nobriga and the victim of his Hawaii AFHM conviction was not included in § 921(a)(33)(A)(ii), the Government had failed to prove that Nobriga had been previously convicted of an MCDV. *Id.* at 1182-83.

safeguard a defendant's Sixth Amendment right "to have a jury determine, beyond a reasonable doubt, his guilt of every element of the crime with which he is charged," *United States v. Gaudin*, 515 U.S. 506, 522-23 (1995), and "any particular fact that the law makes essential to his punishment," *United States v. Booker*, 543 U.S. 220, 232 (2005) (internal quotation marks omitted). There exists no logical or precedential basis for the extension of the same limitations to the range of evidence that is admissible when the Government is being put to its burden of proof at trial.

## IV.

In sum, I would hold that § 921(a)(33)(A) plainly requires that only the mode of aggression, and not the relationship status between the perpetrator and the victim, must be an element of the predicate misdemeanor offense. The Government, of course, remains obligated to prove the existence of a domestic relationship as defined in § 921(a)(33)(A)(ii) to a jury beyond a reasonable doubt, using "extrinsic evidence" admissible under the Federal Rules of Evidence if necessary. Accordingly, I respectfully dissent.